983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Titus CONNALLY, David Connally, and Greg Swinney,
Defendants-Appellants.
 Nos. 91-6401, 91-6440, 91-6441.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1993.
 
 Before KENNEDY and BATCHELDER, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendants Titus Connally ("Titus"), David Connally ("David") and Greg Swinney were indicted for conspiracy to distribute approximately 9 grams of crack cocaine, 21 U.S.C. § 846, possession with intent to distribute crack cocaine, 21 U.S.C. § 841(a)(1), and using a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c). Defendants David Connally and Greg Swinney were also indicted for being convicted felons in possession of a firearm, 18 U.S.C. § 922(g)(1).
 
 
 2
 The trial court denied the defendants' motion to suppress evidence seized at the time of arrest which serves as the basis for the charges against them. In August, 1991, a jury found the defendants guilty of each count of the indictment. The defendants' motions for judgment of acquittal or, in the alternative, for a new trial were denied. A sentencing hearing was held on November 29, 1991. Defendant Titus was sentenced to 300 months; David received 169 months; and Swinney received 276 months.
 
 
 3
 The defendants appeal their convictions and sentences. They raise several sources of error. First, they allege that the District Court erred in denying their motion to suppress the seized evidence. Second, they argue that there was insufficient evidence to sustain their convictions. Third, they allege they did not receive a fair trial due to prosecutorial misconduct and the failure of the trial court to consider new evidence. Finally, they argue that the District Court miscalculated their sentences under the Sentencing Guidelines by including alleged "relevant conduct." The defendants' convictions are AFFIRMED. However, the sentences of Titus Connally and Swinney must be recalculated.
 
 I.
 
 4
 On May 18, 1991, officers Gannaway, Elliot and Turner of the Chattanooga Police Department were doing a routine patrol in a known high drug trafficking area in Chattanooga. The officers had made several prior arrests for narcotics trafficking here and had numerous complaints from people in the neighborhood about narcotics sales. They spotted a parked van and observed a man, later identified as Jimmy Bush, standing outside the van next to the front passenger side window. Titus was the driver, David was seated in the front passenger seat and Swinney was in the back seat.
 
 
 5
 Officer Gannaway observed Bush clench his fist as if holding something and place it inside the van through the open window upon sighting Turner's patrol car. Then Bush immediately turned and walked away and the van pulled off. Officer Gannaway stopped Bush and patted him down for protection. The patdown retrieved a screen commonly used for smoking crack cocaine and $20.
 
 
 6
 Officer Elliot radioed Turner that the pedestrian had thrown something in the van and Turner stopped the van. Turner observed David lean over in the passenger seat as if he were putting something under the seat. Turner ordered Titus out of the van and frisked him. He felt a bulge and some bullets. Turner warned the other officers of a possible gun in the van because of the bullets he had discovered. The bulge turned out to be a wad of money, $1,138, and illegal lottery tickets.
 
 
 7
 Officer Elliot asked Swinney and David to exit the van. After this, Officer Gannaway retrieved a cellophane bag containing crack cocaine which he saw on the floor of the van directly in front of the passenger's seat. Gannaway retrieved the bag. Turner had advised Gannaway that David had leaned over as if putting something under the seat. Gannaway looked under the seat and found a loaded gun which was further back under the seat, which he also secured.
 
 II.
 A. Terry Stop and Frisk
 
 8
 All three defendants contend that the evidence seized by the police after the stop should have been suppressed. The factual findings of a district court ruling on a motion to suppress are reviewed by this Court under the clearly erroneous standard. United States v. Hughes, 898 F.2d 63, 64 (6th Cir.1990). In order for officers legally to make an investigative stop of a suspected criminal, they must have reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1 (1968). See also, United States v. Barrett, 890 F.2d 855, 860 (6th Cir.1989). In determining reasonable suspicion, "the totality of the circumstances--the whole picture--must be taken into account." United States v. Cortez, 449 U.S. 411, 417 (1981).
 
 
 9
 The District Court found that the officers had "reasonable suspicion" that criminal activity was afoot and were therefore justified in conducting an investigative or Terry stop of the van. The court based this holding on the following findings: that the officers knew this was a high drug trafficking area; that they had seen drug dealing taking place here before; that the pedestrian had thrown something in the van upon seeing the police; and that the pedestrian quickly walked away and the van quickly pulled away. In their brief, the defendants correctly argue that each factor alone is not enough to provide reasonable suspicion. However, when viewed together as a whole, these factors were sufficient to establish reasonable suspicion for the stop.
 
 
 10
 The District Court next found that once the van was lawfully stopped, the officers were entitled to ask the driver, Titus Connally, to step out of the vehicle under Pennsylvania v. Mimms, 434 U.S. 106 (1977). See also United States v. Hardnett, 804 F.2d 353 (6th Cir.1986), cert. denied, 479 U.S. 1097 (1987). In Hardnett, this Court reasoned that since the Supreme Court has held that officers may require a driver of a lawfully stopped vehicle to exit even though they lack any particularized reasons for believing the driver possessed a weapon, New York v. Class, 475 U.S. 106, 115 (1986), officers may also, consistent with the Fourth Amendment, order occupants out of a car when they have an articulable suspicion that the occupants are armed. Hardnett, 804 F.2d at 358. This rule applies equally to David and Swinney who were ordered out of the car by Officer Elliot.
 
 
 11
 The District Court found that the bullets found in the pat down gave rise to fear that a weapon could be in the van. Once an officer has specific and articulable facts to believe the suspect is dangerous and may gain access to weapons, he may search the passenger compartment of the vehicle, even where the suspect has been removed from the car. Id.
 
 
 12
 The seizure of the bag of crack cocaine was lawful because it was in plain view in the front of the van where the officer was looking for weapons. "If, while conducting a legitimate Terry search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." Michigan v. Long, 463 U.S. 1032, 1050 (1983). The District Court was correct in denying the defendants' motion to suppress.
 
 B. Sufficiency of the Evidence
 
 13
 The defendants contend that the evidence introduced at trial was not sufficient to support their conviction on any of the counts in the indictment. In reviewing sufficiency of the evidence challenges, an appellate court must uphold the jury's verdict if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This Court must draw all reasonable inferences in the government's favor. United States v. Allen, 954 F.2d 1160, 1169 (6th Cir.1992). The standard remains the same whether the evidence is direct or circumstantial. Id.
 
 1. Conspiracy
 
 14
 To prove a drug conspiracy pursuant to 21 U.S.C. § 846, the government must establish: 1) that the conspiracy existed; 2) that the defendant knew of the conspiracy; and 3) that the defendant knowingly and voluntarily joined the conspiracy. Barrett, 933 F.2d at 359. A defendant's mere presence at the scene of the crime is inadequate proof of the defendant's participation in the conspiracy. United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986).
 
 
 15
 At trial, the government established that the rented van, which was parked in a known drug trafficking area, contained a bag of crack cocaine and a loaded gun. Their theory of the case was that the defendants were in the process of making a sale to Bush. According to the government, each defendant had a role in the conspiracy: Titus was the driver and lookout; David was to handle the actual sale and distribution; and Swinney was the lookout and enforcer.
 
 
 16
 The evidence is weakest as to Swinney's participation in the alleged conspiracy. The only evidence of his involvement is that he was in the van, that he had $270 and that he had access to the gun. There is no direct evidence of Swinney's knowledge of the presence of the gun or the drugs in the van. However, the jury heard testimony that drug dealers do not transact "business" in the presence of nonparticipating witnesses. And although all three had access to the gun, the gun was most readily accessible to Swinney. Indeed it would have been difficult for the other defendants to reach the gun quickly. When viewed most favorably to the government, a jury could infer from the evidence that Swinney acted as enforcer, lookout or handled the money. There is sufficient evidence for a jury to conclude that a conspiracy existed and that each defendant voluntarily participated in it.
 
 
 17
 2. Possession with Intent to Distribute Cocaine
 
 
 18
 To support a conviction of possession with intent to distribute, the evidence must demonstrate that a defendant 1) knowingly 2) possessed a controlled substance 3) with the intent to distribute. 21 U.S.C. § 841(a)(1); Christian, 786 F.2d at 210. Proof of actual possession is unnecessary as long as there is proof that a defendant aided and abetted the criminal venture. United States v. Clark, 928 F.2d 733, 736 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991) (per curiam). One aids or abets another in the commission of a crime when he associates himself with the venture such that his participation is intended to bring about the crime or make it succeed. Id. From the same evidence used to support the conspiracy conviction, a jury could conclude that the defendants jointly possessed the cocaine as principals to the crime or as aiders and abettors.
 
 
 19
 3. Use of a Firearm During Drug Trafficking Crime
 
 
 20
 A conviction under 18 U.S.C. § 924(c)(1) requires proof of 1) the using or carrying of a firearm 2) during and in relation to a crime of violence or drug trafficking. This Court has held the words "uses" and "carries" in the statute "should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." United States v. Acosta-Cazares. 878 F.2d 945, 952 (6th Cir.), cert. denied, 493 U.S. 899 (1989). It is not necessary for the defendant to have actual possession during the commission of the drug trafficking crime. United States v. Blankenship, 954 F.2d 1224, 1229 (6th Cir.), cert. denied, 113 S.Ct. 288 (1992). It is enough "if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor." United States v. Brown, 915 F.2d 219, 226 (6th Cir.1990) (quoting United States v. Payero, 888 F.2d 928, 929 (1st Cir.1989)).
 
 
 21
 Officer Gannaway testified that the gun found under the seat was loaded and "ready to fire." He also testified that all three defendants had access to the gun. Regardless of who was the actual "enforcer" in this scheme, all three coconspirators benefitted from the presence of the loaded gun in the van. Under this Court's broad reading of section 924(c)(1), all three defendants "used" a gun "in relation to" a drug trafficking crime.[1]
 
 4. Felon in Possession of a Firearm
 
 22
 Defendants David Connally and Swinney argue that there was insufficient evidence to convict them of being felons in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Section 922(g) requires knowing possession by a felon of a firearm in or affecting interstate commerce. The parties stipulated that David and Swinney are convicted felons and that the gun traveled across state lines. Evidence of actual or constructive possession is enough to sustain the convictions. "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). "Presence on the scene plus association with illegal possessors is not enough to ... show the requisite knowledge, power, or intention to exercise control over [a firearm]." United States v. Poulos, 895 F.2d 1113, 1119 (6th Cir.1990) (possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861, 5871) (quoting United States v. Birmley, 529 F.2d 103, 107 (6th Cir.1976)). However, "substantial 'other' incriminating evidence, combined with presence, serves to demonstrate ... constructive possession." Id. The evidence that both defendants had access to the gun is enough to sustain their convictions.
 
 C. Prosecutorial Misconduct
 
 23
 1. Comment on the Defendants' Failure to Testify and Shifting the Burden of Proof
 
 
 24
 Next, the defendants charge that the prosecutor made comments which infringed upon their Fifth Amendment privilege against self-incrimination, improperly shifted the burden of proof, and vouched for the integrity of the government's case and the guilt of the defendants. By failing to object during trial, the defendants waive any objection to the alleged improper comments on appeal unless they constituted "plain error or [a] defect ... affecting substantial rights." United States v. Meyers, 952 F.2d 914, 917 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992) (quoting Fed.R.Crim.P. 52(b)).
 
 
 25
 [P]rosecutorial misconduct and improper arguments must be "so pronounced and persistent that they permeate[d] the entire atmosphere of the trial." Inappropriate remarks by the prosecutor do not alone justify reversal of a criminal conviction in an otherwise fair proceeding, as long as the jury's ability to judge the evidence fairly remains intact.
 
 
 26
 United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990) (citations omitted).
 
 
 27
 During voir dire, the prosecutor made the following statements:
 
 
 28
 Now, the Defendants in this case have a constitutional right to testify if they want to. I can't stop them, the Judge can't stop them. Nobody can stop them from testifying if they want to.
 
 
 29
 By the same token, though, they have a constitutional right not to testify and you can't hold it against them if they don't.
 
 
 30
 Joint App. at 137-38. There is nothing prejudicial in these statements. They correctly state the law and, considering that they were made during voir dire, the prosecutor was not commenting on the defendants' failure to testify.
 
 
 31
 The following statements were made by the prosecution during closing arguments:
 
 
 32
 Don't you think that it's beyond a reasonable doubt that these people were there to do a drug deal?
 
 
 33
 What other reason were they there for? There's no evidence in this record as to any other reason for them to be there except to do a drug deal. There is no other evidence other than what we've put on that shows that they were there to do a drug deal.
 
 
 34
 Id. at 229.
 
 
 35
 And what evidence is there of what they were doing there in the first place?
 
 
 36
 Id. at 235.
 
 
 37
 Well, ladies and gentlemen, they don't have to call anybody. They have a right not to testify, they have a right not to call witnesses. They can make us prove the case. But, ladies and gentlemen, they have the constitutional right to call witnesses if they want to. They have the power under the Federal Rules of Criminal Procedure to bring Jimmy Bush in here and make him a witness if that's what they want to do. They don't have to, but they can do that.
 
 
 38
 ....
 
 
 39
 Mr. Wright wants to talk about fingerprints. Ladies and gentlemen, you need an expert to tell you whether material will hold fingerprints or not. You don't have an expert here. Again, they could call an expert if they wanted to say their fingerprints weren't on there, they don't have to, but they could have done that.
 
 
 40
 Id. at 236.
 
 
 41
 The defendants allege that these statements indirectly commented on the defendants' failure to testify. A corollary of the Fifth Amendment privilege against self incrimination is "that neither a prosecutor nor a trial judge may comment upon a criminal defendant's failure to testify. Griffin v. California, 380 U.S. 609 (1965)." Spalla v. Foltz, 788 F.2d 400, 403 (6th Cir.), cert. denied, 479 U.S. 935 (1986). To determine whether comments by a prosecutor constitute comment on the failure to testify, this Court analyzes four factors:
 
 
 42
 1) Were the comments "manifestly intended" to reflect the accused's silence or of such a character that the jury would "naturally and necessarily" take them as such;
 
 
 43
 2) Were the remarks isolated or extensive;
 
 
 44
 3) Was the evidence of guilt otherwise overwhelming;
 
 
 45
 4) What curative instructions were given, and when.
 
 
 46
 United States v. Moore, 917 F.2d 215, 225 (6th Cir.1990), cert. denied, 111 S.Ct. 1590 (1991).
 
 
 47
 First, manifest intent to reflect an accused's silence "will not be found 'if some other explanation for his remark is equally possible.' " Id. (quoting Steele v. Taylor, 684 F.2d 1193, 1204 (6th Cir.1982), cert. denied, 460 U.S. 1053 (1983)). Throughout his closing argument, the prosecutor underscored the strengths of the government's evidence.
 
 
 48
 The government is not forbidden to comment on the strength of its proofs; otherwise we take the "argument" out of closing argument and reduce it to a flaccid resume of the evidence. We must not lose sight of the fact that what is sought to be prevented is the government conveying to the jury that the defendant is under some kind of duty to testify or produce evidence.
 
 
 49
 United States v. Drake, 885 F.2d 323 (6th Cir.1989), cert. denied, 493 U.S. 1033 (1990) (emphasis in original). Far from implying a duty, the prosecutor told the jury that the defendants did not have to testify or present evidence. Second, the complained of remarks were not extensive. The remarks relating to the defendants' right to call witnesses were made in rebuttal to statements made by the defense in their closings. Third, although not overwhelming, there was sufficient evidence presented upon which to convict the defendants of dealing drugs, as discussed above. Fourth, the jury was instructed several times on the standard and burden of proof in the case. Curative instructions need not follow complained-of-comments immediately. Moore, 917 F.2d at 226. In Moore, the Court held that normal jury instructions regarding the standard and burden of proof were sufficient to cure prosecutorial remarks misrepresenting the burden. In this case, the burden of proof was explained to the jury by the trial court before opening arguments, after the closing arguments and during the jury charge.
 
 
 50
 When these criteria are applied to this case, it is clear that the isolated comments were not intended to reflect on the defendants' silence. Even assuming that the prosecutor did make some inappropriate remarks, they did not impede the jury's ability to judge the evidence fairly, and clearly did not arise to the level of plain error enunciated by this Court in Castro, 908 F.2d at 89 (impropriety must be so pronounced and persistent that it permeates the entire atmosphere of the trial).
 
 
 51
 2. Vouching for the Integrity of the Government's Case
 
 
 52
 The defendants next contend that the prosecutor impermissibly vouched for the government's case and the guilt of the defendants. The prosecutor made the following comment in his closing argument.
 
 
 53
 There's an enormous amount of crime ou[t] there. There's plenty of crooks we could prosecute. There's lot [sic] of crooks. There's a lot of business. I suggest we don't need to be drumming up business and trying to sucker juries, particularly when I've seen some of you before and I'll see some of you again.
 
 
 54
 Joint App. at 234. These statements were made in response to comments made by defense counsel in their closing argument.
 
 
 55
 In United States v. Young, 470 U.S. 1 (1985), the Supreme Court upheld a conviction after the prosecutor gave the jury his personal impressions about the defendant's guilt. The prosecutor's statements in Young were an "invited response" after defense counsel had accused the prosecutor of misconduct. Id. at 12-13. The relevant inquiry is not solely whether the prosecutor's comments were inappropriate, but whether, in the context of the entire proceedings, they affected the jury's ability to fairly consider the evidence. Young, 470 U.S. at 12. The Court held that while the prosecutor's remarks were improper even as a response to the defense counsel's arguments, they were not plain error. Id. 14-15.
 
 
 56
 In this case, even though the prosecutor's comments may have been inappropriate, they didn't reach the level of egregiousness of those in Young. The prosecutor didn't offer the jury his personal beliefs, but was responding to the accusation that the government was trying to "sucker" the jury. We find that the jury's ability to deliberate was not compromised.
 
 D. Fair Trial
 
 57
 The defendants argue that they were deprived of a fair trial because the prosecutor withheld allegedly exculpatory information. In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court established a duty, based on the requirement of due process, upon the prosecution to disclose to a defendant evidence that is both favorable and material to his guilt or punishment. However, this Court has held that "No Brady violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' or where the evidence is available to defendant from another source." Clark, 928 F.2d at 738 (quoting United States v. Grossman, 843 F.2d 78, 85 (2d Cir.1988), cert. denied, 488 U.S. 1040 (1989)). See also, United States v. Todd, 920 F.2d 399, 405 (6th Cir.1990); United States v. Davis, 787 F.2d 1501, 1505 (11th Cir.), cert. denied, 479 U.S. 852 (1986).
 
 
 58
 In this case, the defendants assert that information surrounding the indictment of Jimmy Bush and others for conspiracy to possess over 300 grams of cocaine was Brady material which the government failed to disclose. This Court does not reach the question of whether the government was obligated under Brady to disclose this information. The indictment and the prosecution report are public records which the defendants or their counsel could have easily obtained prior to trial. In fact, in their brief, the defendants indicate that they learned of the indictment in their own investigation of court records, which didn't take place until after the trial. T. Connally's Br. at 7. Because this information was available to the defendants in the public record prior to trial there is no Brady violation.
 
 E. Relevant Conduct
 
 59
 Defendants Titus Connally and Swinney assert that the District Court erred in including alleged earlier drug transactions as "relevant conduct" for sentencing purposes. The defendants argue that the 1989 drug sales made by Sonia Hudson, on behalf of Titus and Swinney, were not part of the "same course of conduct" as the charged offense. They also argue that the evidence was insufficient to support the sentencing court's calculation of the quantity of drugs involved in this conduct.
 
 
 60
 Section 1B1.3(a)(2) of the Sentencing Guidelines states that the base offense level "shall be determined on the basis of ... all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." The goal of the relevant conduct provision is to allow a court to impose sentences commensurate with the gravity of the offense. In drug cases, this provision permits an increase in the base offense level based on quantities of drugs not part of the offense of conviction or charged in the indictment, but part of the same course of conduct or overall scheme. United States v. Davern, 970 F.2d 1490, 1494 (6th Cir.1992) (en banc), petition for cert. filed, (Oct. 19, 1992).
 
 
 61
 Whether an activity is considered "relevant conduct" under the Sentencing Guidelines is a question of fact which should not be disturbed unless found to be clearly erroneous. United States v. Kappes, 936 F.2d 227, 229 (6th Cir.1991). Moreover, this Court gives deference to the District Court's application of the Sentencing Guidelines to the facts. United States v. Wilson, 954 F.2d 374, 376 (6th Cir.1992). What constitutes the same course of conduct or a common plan or scheme is not discussed in the Guidelines or the related commentary.
 
 
 62
 This Court has recognized that drug quantities involved in an overall scheme or plan include quantities charged in a dismissed count and should be considered in determining the sentencing range under the Guidelines. See, United States v. Sailes, 872 F.2d 735 (6th Cir.1989); United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989). This Court has also held that a court may consider information obtained from the defendant during a presentence conference. See, United States v. Wilson, 954 F.2d 374 (6th Cir.1992); United States v. Miller, 910 F.2d 1321 (6th Cir.1990), cert. denied, 111 S.Ct. 980 (1991).
 
 
 63
 In Sailes, the issue was whether "relevant conduct" could include quantities charged in a dismissed count, and not whether conduct involved in the dismissed charge was a part of the defendants' same course of conduct. Sailes acknowledged involvement in her son's drug distribution at her home. The drugs involved were found in two separate packages, together weighing 816 grams; both were seized from her home in the same arrest. Sailes had knowledge of only one of the packages, which weighed 36 grams, but was sentenced based on the full 816 grams.
 
 
 64
 Similarly, in Smith, the defendant plead guilty to possession of four ounces of cocaine with intent to distribute in a two-count indictment. Count two, which was dismissed, involved possession of ten grams of cocaine base. The defendant's base offense level was calculated based on the amounts in counts one and two. Both the cocaine and the cocaine base had been found in the defendant's possession in the same search. In Smith and Sailes, the drugs found to be part of the same course of conduct or the overall scheme were involved in the same event as the drugs involved in the offense of conviction.
 
 
 65
 Other circuits have found that temporal proximity alone is not determinative of relevant conduct. See United States v. Santiago, 906 F.2d 867, 872 (2d Cir.1990); United States v. Moore, 927 F.2d 825, 828 (5th Cir.), cert. denied, 112 S.Ct. 205 (1991) (rejecting notion that "earlier conduct be placed off-limits simply because of lapse of time"). This Circuit has never enunciated an explicit time bar after which similar conduct becomes irrelevant. However, we have never recognized action occurring over one year prior to the charged offense, as in this case, as relevant conduct.
 
 
 66
 In Wilson, we did recognize sales occurring two months prior to the offense as relevant conduct. However, this information arose out of a discussion the defendant was having with his probation officer. This conversation connected the prior sales with the charged offense and established that they were part of the same continuous drug sale operation. Wilson, 954 F.2d at 376.
 
 
 67
 In Miller, we upheld the sentencing court's finding that uncharged sales of cocaine made over a twenty-month period, encompassing the admitted three-month conspiracy, were relevant conduct. The defendant admitted to his probation officer that he had purchased approximately one ounce of cocaine every week from February 1987 through October 1988. The defendant plead guilty to a conspiracy to distribute cocaine between March 1, 1988 and May 11, 1988. As in Wilson, the defendant's admission here established the continuous nature of his drug activity.
 
 
 68
 In this case, government witness Sonia Hudson testified at the defendants' sentencing hearing that she sold drugs for defendants Titus (known to her as "Allah") and Swinney (known to her as "Geebo") over a one-year period during most of 1989. Hudson also testified that in March of 1990, Titus and Swinney, along with several others, had robbed her home of drugs and money and had brutalized her and her children.
 
 
 69
 The court concluded that Hudson was a credible witness and found that her alleged sales for Titus and Swinney were part of the same course of conduct as the activities of the charged offenses. The court pointed to the following factors to support its relevant conduct determination: the locale for the Hudson dealing and the dealing in this case is the same, Chattanooga, Tennessee; the type of drug is the same, cocaine powder as well as crack; and that the partnership was the same, Swinney and Titus Connally. Finally, it concluded that "what the Defendant[§ were] doing in 1991 was the same thing [they were] doing in 1990 and 1989, dealing cocaine." Joint App. at 318.
 
 
 70
 Unlike Sailes and Smith, the prior conduct and the conduct of the offense of conviction in this case did not arise out of the same event. Unlike Miller and Wilson, the evidence of the prior sales did not establish that the 1989 sales and the 1991 attempted sale were part of a continuous drug operation. There is a break in the evidence between March 1990 and March 1991, assuming, as the District Court did, the robbery is also relevant conduct. The government presented no other evidence that the defendants had engaged in an ongoing enterprise from 1990 to 1991.
 
 
 71
 While temporal proximity alone should not serve as the sole basis for making the relevant conduct determination, it is a significant factor, especially where, as here, there is a break of at least one year between events. It is incongruent to say that one set of actions, even though similar in place and manner, is part of the "same course of conduct" or "common scheme or plan," as another set of actions occurring one year later, with no evidence connecting the two occurrences.
 
 
 72
 Also, in the Hudson sales, Titus and Swinney were operating as wholesalers, dealing in large quantities of cocaine powder and crack. In contrast, in the sale at issue, the defendants acted as retailers, attempting to sell a very small quantity of crack, and no cocaine powder was involved.
 
 
 73
 We find that the District Court's conclusion that the Hudson transactions were part of the same course of conduct as the present offense was clearly erroneous. Because we conclude that these transactions were not relevant conduct for sentencing purposes, we do not reach the related issue of whether Hudson's testimony was sufficiently certain and reliable to establish the quantity of drugs used to calculate the base offense level.
 
 III.
 
 74
 Accordingly, we AFFIRM the defendants' convictions. We REVERSE the District Court's sentencing of defendants Titus Connally and Greg Swinney, and REMAND for resentencing consistent with this opinion.
 
 
 
 [1]
 The convictions can also be sustained under the coconspirator doctrine of Pinkerton v. United States, 328 U.S. 640, 646-47 (1946). Under the doctrine, a conspirator may be punished for the foreseeable crimes committed by a coconspirator in furtherance of the conspiracy. United States v. Christian, 942 F.2d 363, 367 (6th Cir.1991), cert. denied, 112 S.Ct. 905 (1992) (having access to a gun during drug conspiracy offense furthered the conspiracy)