**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jo Ann SAILES, Defendant–Appellant.**

No. 88–5810.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1989.

Decided April 13, 1989.

Lawrence J. Laurenzi (argued), W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, Asst. U.S. Atty., Memphis, Tenn., for U.S.

Howard L. Wagerman, William B. Seligstein (argued), Wagerman & Seligstein, Memphis, Tenn., for Jo Ann Sailes.

Before ENGEL, Chief Judge, and MERRITT and NELSON, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This case arises under the new Sentencing Guidelines, the constitutionality of which was recently upheld in *Mistretta v. United States,* 488 U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

Defendant Jo Ann Sailes was arrested after two batches of cocaine, weighing a total of 816 grams, were found at her place of residence. The cocaine had been placed there by Mrs. Sailes' oldest child, who, as she knew, was actively engaged in the drug trade. Mrs. Sailes was aware of the

presence on her property of one packet of cocaine, weighing 36 grams, but she was unaware of the presence of the remaining 780 grams. She pleaded guilty to the possession, with intent to distribute, of under 500 grams of cocaine, being aided and abetted by another. The district court sentenced Mrs. Sailes to 45 months in prison—a sentence at the upper end of the "guideline range" for an offense involving .5 to 1.9 kilograms of cocaine.

Mrs. Sailes argues that the guidelines were applied improperly, because she did not know that as much as half a kilogram of cocaine was on her property and because the offense to which she pleaded guilty did not involve that large a quantity. She argues alternatively that the district court ought to have departed from the sentencing range dictated by the guidelines. Finding none of these arguments persuasive, we shall affirm the sentence imposed by the district court.

## I

Appellant is the mother of seven children, the oldest of whom is an 18-year-old boy named Sol Sailes. Sol bought and sold cocaine with his mother's knowledge and approval. Mrs. Sailes would sometimes take telephone messages for Sol from his customers, and she would sometimes deliver packages for him.

On the night of January 13–14, 1988, police searched Mrs. Sailes' residence, pursuant to a warrant, and discovered 36 grams of cocaine in a lockbox in a bedroom of the house. They also found 780 grams in a gym bag inside a playhouse on the porch. Mrs. Sailes was arrested and indicted on one count of aiding and abetting possession, with intent to distribute, of 816 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

At a hearing held before District Judge Jerome Turner on March 18, 1988, Mrs. Sailes indicated her intention to plead guilty to the lesser included offense of possession with intent to distribute under 500 grams of cocaine. (The guilty plea may have been prompted by a desire to avoid the application of 21 U.S.C. § 841(b)(1)(B), which mandates a five-year prison term for offenses involving 500 grams or more of cocaine.)

Judge Turner questioned both Sol Sailes and his mother about the extent of Mrs. Sailes' involvement. He learned that Sol had placed the 780 grams in the playhouse on the porch without his mother's knowledge a few hours before the police arrived. Mrs. Sailes testified, however, that "I knew he was selling drugs, and I did on one or two occasions, I was taking phone messages. I knew he had the mobile phone and the beeper." In addition, the Assistant U.S. Attorney stated that he had witnesses prepared to testify that Mrs. Sailes herself made drug sales from her residence, including one to an undercover police officer.

Judge Turner referred the case to a probation officer for the preparation of a presentence report, as required under the Sentencing Guidelines.[1] A sentencing hearing was scheduled to be held three months later.

At the sentencing hearing the judge addressed several issues raised by the presentence report. The first was the quantity of drugs to be taken into account in calculating the "base offense level." The second was the possibility of a departure from the guidelines because of Mrs. Sailes' lack of knowledge of the quantity of drugs on her property. Third, the judge questioned whether the guidelines adequately took into account Mrs. Sailes' background, character, conduct, and family responsibilities. Finally, a question existed as to whether she should receive a four-point reduction in her offense level for minimal participation.

With regard to the question of what quantity of drugs was to be used in calculating the offense level, the judge decided that 816 grams was appropriate because that was the quantity involved in the overall scheme. The Drug Quantity Table of

---

1. Unless otherwise stated, the version of the Sentencing Guidelines referred to herein is *Sentencing Guidelines and Policy Statements* (1987), United States Sentencing Commission. This version applies to crimes committed between November 1, 1987, and January 15, 1988.

§ 2D1.1 of the Sentencing Guidelines specified a base offense level of 26 for between .5 and 1.9 kilograms of cocaine.

Judge Turner deducted two points, under § 3E1.1 of the guidelines, because of Mrs. Sailes' acceptance of her responsibility for the crime. He deducted another four points under § 3B1.2, because of her minimal participation in the criminal activity. The latter deduction, unlike the two-point deduction for acceptance of responsibility and unlike the finding that the base offense level was 26, had not been recommended in the presentence report.

Once the deductions had been made, Judge Turner was left with an offense level of 20. Mrs. Sailes came within Criminal History Category II, because she had two prior offenses. Using the Sentencing Table in Part A of Chapter 5 of the guidelines, Judge Turner determined that the guideline range for the sentence of such a person was 37 to 46 months.

Before imposing a sentence, the judge verified through counsel that Mrs. Sailes understood her exposure and accepted the plea agreement in light of that understanding:

> "THE COURT: Mr. Wagerman, I will hear from you in just a moment with respect to imposition of sentencing. But there is probably one other task we need to undertake prior to that time and that is the acceptance of the plea agreement that has been tendered to me by you and your client.... Based on the findings I have now made, the range of imprisonment sentence is 37 to 46 months. And I do not, at this time, intend to go outside of that range.
>
> However, because of the unusual nature of all of this, I want to make sure. Is it your client's desire to go forward with this proceeding on a plea of guilty?
>
> Mr. WAGERMAN: It is, your Honor. We discussed that prior to today.
>
> THE COURT: Then on that basis, I will accept the plea agreement as has been proposed by the defendant in conjunction with the government and will now hear from the parties with respect to the imposition of sentence."

Counsel for Mrs. Sailes did not object to the 37 to 46 month sentencing range the judge had reached. Counsel merely asked the court to impose a sentence at the low end of that range, in light of the ages of the family members and the needs of Mrs. Sailes' children for maternal care. Mrs. Sailes spoke in support of this argument, adding, "the less sentence that is possible would be a real glory, because I really need to help take care of my kids."

Judge Turner then imposed a sentence of 45 months, explaining:

> "The reason I have picked that figure, primarily, is because I think you have been extremely culpable in allowing your son to get to the position that he now finds himself in today. The boy is only 18 years old, and he is off to jail now for a number of years. And you know, I suspect, and I know that his going to jail is going to be a hard, hard experience and one that is not going to be easy for him to bounce back from. I attribute his involvement in that, in some significant part, to your failure to raise him the way he should have been raised and to exercise the role that you should have exercised over him in your home.
>
> I am not suggesting that every parent has the ability to control all the conduct of 18–year–old children, but they certainly have the ability to control what goes on in their own home."

## II

On appeal, Mrs. Sailes argues first that it was improper to use the entire 816 grams of cocaine in determining her base offense level under the guidelines.

Prior to an amendment that took effect on January 15, 1988, the "General Application Principles" of the guidelines contained this passage:

> "The court shall apply the guideline in Chapter Two (Offense Conduct) most applicable to the offense of conviction. *Provided*, however, in the case of conviction by a plea of guilty or *nolo conten-*

*dere* containing a stipulation that specifically establishes a more serious offense than the offense of conviction, the court shall apply the guideline in such chapter most applicable to the stipulated offense. (b) The court shall determine any applicable specific offense characteristic, victim-related adjustment, or departure from the guidelines attributable to offense conduct, according to the principles in § 1B1.3 (Relevant Conduct)."

In this case, the guideline most applicable to the "offense of conviction" is § 2D1.1, "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)." Section 1B1.3 read as follows, prior to the amendment:

*"Relevant Conduct*

To determine the seriousness of the offense conduct, all conduct, circumstances, and injuries relevant to the offense of conviction shall be taken into account.

(a) Unless otherwise specified under the guidelines, conduct and circumstances relevant to the offense of conviction means:

acts or omissions committed or aided and abetted by the defendant, or by a person of whose conduct the defendant is legally accountable, that (1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction, or (2) are relevant to the defendant's state of mind or motive in committing the offense of conviction, or (3) indicate the defendant's degree of dependence upon criminal activity for a livelihood.

(b) Injury relevant to the offense of conviction means harm which is caused intentionally, recklessly or by criminal negligence in the course of conduct relevant to the offense of conviction."

The government argues that Sol Sailes' possession, with intent to distribute, of the 780 grams of cocaine in the playhouse on his mother's porch, together with his possession, with intent to distribute, of the 36 grams in the lockbox in the bedroom, form part of the same course of conduct or a common scheme or plan under § 1B1.3. By aiding or abetting part of the scheme or course of conduct, Mrs. Sailes aided or abetted all of it.

We cannot say that the trial judge erred in accepting this argument. The evidence was clear that Mrs. Sailes had allowed her son to use her house as a base of operations for his cocaine business, and that she had actively assisted him in this enterprise. There is no indication that she ever told her son not to let his inventory of cocaine get above half a kilogram. Mrs. Sailes was responsible for whatever quantity of cocaine her son stored in her house, whether it happened to be more or less than half a kilogram at any given time and whether or not she was kept current at all times as to the exact amount that was on the premises. She herself, as we have seen, did not object at the sentencing to being held responsible for the full amount of the cocaine. She was explicitly told how the guideline range was being calculated, and she was explicitly told that the judge intended to impose a sentence in the range of 37 to 46 months. Given an opportunity to back out, she declined to take it. Against this background, we do not find her present remonstrance very persuasive.

Our conclusion is buttressed by the revised text of § 1B1.3 that became effective on January 15, 1988. The new § 1B1.3 provides that:

"(a) ... Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, ... shall be determined on the basis of the following:

(1) all acts and omissions ... aided and abetted by the defendant....

(2) ... all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction...."

The commentary that accompanies § 1B1.3 explains:

"[T]he applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged.... *[I]n a drug distribution case, quantities and types of drugs not specified in the count of con-*

*viction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction."* (Emphasis supplied.)

Although not directly applicable to Mrs. Sailes, this language "restates the intent of § 1B1.3 as originally promulgated." Notice of Amendments, 53 Fed.Reg. 1288 (1988). If that was the original intent, it is hard for us to see how Judge Turner could be said to have erred in including the full quantity of cocaine in determining Mrs. Sailes' offense level. See *United States v. Guerrero*, 863 F.2d 245 (2d Cir.1988), the outcome in which is consistent with the result reached here.

### III

 If the district court correctly followed the "Application Instructions" in § 1B1.1, Mrs. Sailes argues that the court nonetheless erred in failing to depart from the guidelines. She argues that her lengthy prison sentence was unreasonable, in light of the fact that she has minor children who need the guidance of a parent and in light of the fact that her 45-month sentence is almost as harsh as the 63-month sentence imposed on Sol Sailes, whose role in the cocaine-selling enterprise was much greater.

Whether a trial court's refusal to impose a sentence below the guideline range is subject to appellate review at all is a question that has not been fully briefed in this case, and we decline to decide the question here. We need only say that if Congress has given us the power to conduct such review, we should not be inclined to second-guess the trial court on the facts presented here. Section 5H1.6 of the guidelines specifies that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines." If family ties and responsibilities are relevant in this case, we have no basis for saying that Judge Turner was mistaken in his apparent belief that the proper development of Mrs. Sailes' younger children might be facilitat-

ed by the children's removal from her direct influence for a time.

Congress has determined that trafficking in cocaine is a serious crime meriting harsh punishment. 18 U.S.C. § 3742, which governs appellate review of federal sentences, was "designed to preserve the concept that the discretion of a sentencing judge has a proper place in sentencing and should not be displaced by the discretion of an appellate court." S.Rep. No. 225, 98th Cong., 2d Sess. 150, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3333. We see no reason to displace the discretion exercised by Judge Turner in sentencing Mrs. Sailes as he did.

AFFIRMED.