899 F.2d 15
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Christopher T. SHORTER, Defendant-Appellant.
 No. 89-1779.
 United States Court of Appeals, Sixth Circuit.
 March 29, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges, and ANN ALDRICH, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant Christopher Shorter was convicted of distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1). On June 15, 1989, the court sentenced the defendant to 106 months of imprisonment. Defendant now appeals this sentence. We find that the trial court properly applied the sentencing guidelines, and we therefore AFFIRM.
 
 
 2
 Defendant argues that he is entitled to resentencing under the Sentencing Guidelines because the trial court incorrectly determined his base offense level under Guideline Sec. 1B1.3. Section 1B1.3 of the Guidelines states in part:
 
 
 3
 (a) Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 (2) solely with respect to offenses of a character for which Sec. 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....
 
 
 7
 United States Sentencing Commission, Guidelines Manual (U.S.S.G.), Sec. 1B1.3 (Nov.1989).
 
 
 8
 The commentary to section 1B1.3 notes, " 'Such acts and omissions,' as used in subsection (a)(2), refers to acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable. This subsection applies to offenses of types for which convictions on multiple counts would be grouped together pursuant to Sec. 3D1.2(d); multiple convictions are not required." U.S.S.G. Sec. 1B1.3, comment. (n.2). Further, the background section notes, "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. Sec. 1B1.3, comment. (backg'd).
 
 
 9
 Defendant's offense in this case falls within section 2D1.1 of the Sentencing Guidelines, and is an offense for which section 3D1.2(d) requires grouping of multiple counts. Therefore, section 1B1.3 is applicable. Defendant contends that in applying section 1B1.3, the trial court based its determination of his base offense level on the trial testimony of government informant Maslowski, who stated that he had sold over 100 ounces of cocaine during the period in which he was dealing cocaine. Defendant argues that Maslowski testified that he did not even begin dealing with defendant until January of 1988, and that the guidelines do not permit the inclusion of the total amount of cocaine sold by Maslowski from the spring of 1987 through 1988 because defendant could not aid and abet Maslowski's drug dealing over the eight month period before defendant became involved with him.
 
 
 10
 Maslowski's testimony is not inconsistent with the trial court's sentencing determinations. The court stated, "There is ample evidence in this case to demonstrate that Mr. Shorter and Mr. Gordon were partners in the drug business, at least particularly with respect to the distribution of drugs to John Maslowski." Joint App. at 389. Maslowski testified that his "business relationship" with Ernest Gordon lasted "from the spring of '87 all the way through '88." Joint App. at 270. Maslowski also testified that " 'Butch' [defendant] had given me his number once before, and I called him on the phone and talked with him. He said if I couldn't ever get ahold of Ernest, I could call him." Id. at 271. When asked, "And when about did this take place?" Maslowski responded, "About the same time frame, winter of '87, '88." Id. Maslowski also testified that defendant supplied him with cocaine from January of 1988 through June of that year. Id.
 
 
 11
 None of Maslowski's testimony is inconsistent with the trial court's determination that the defendant delivered or aided and abetted the delivery of 100 ounces of cocaine to government witness Maslowski. Maslowski's grand jury testimony discloses that before he began dealing directly with Gordon, that Gordon and Shorter were supplying his supplier and that all the cocaine he distributed he obtained from defendant and Gordon. The court concluded that defendant and Gordon were involved in a "business relationship." As a result of this finding, the court considered the dealing between Gordon and Maslowski as well as that between defendant and Maslowski in determining the quantity of cocaine that had been sold.[1] In a recent case, this Court has indicated that such consideration is proper. In United States v. Sailes, 872 F.2d 735 (6th Cir.1989), the defendant, Mrs. Sailes, permitted and occasionally assisted her son's sales of cocaine from their house. She claimed to be unaware of the amounts involved. Although she was convicted by plea of possession with intent to distribute under 500 grams of cocaine, for sentencing purposes, the court assessed her offense level on the basis of her son's possession of 816 grams of cocaine. This Court found that "[b]y aiding or abetting part of the scheme or course of conduct, Mrs. Sailes aided or abetted all of it." Id. at 738.
 
 
 12
 Thus, we find that the trial court properly applied section 1B1.3 in determining defendant's base offense level. Accordingly, we AFFIRM the decision of the District Court.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Defendant argues that Maslowski never testified as to when Gordon and defendant became partners, and that therefore, any reliance on this relationship was improper. The trial court stated, however, "There certainly is evidence that Mr. Shorter was enjoying a very high standard of living all during this period.... Maslowski was asked how many ounces he sold during this period. He answered, 'Maybe over a hundred, maybe over a hundred, a hundred and fifty.' " Joint App. at 391-92 (emphasis added). Thus the court inferred from the evidence presented at trial that Gordon and defendant were partners throughout the period during which Maslowski sold the 100 ounces of cocaine upon which the court relied