**UNITED STATES of America, Plaintiff–Appellee,**

v.

**W. Avery WILSON, Defendant–Appellant.**

No. 91–3136.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1991.

Decided Jan. 21, 1992.

William E. Hunt (Argued and Briefed), Office of the U.S. Atty., Cincinnati, Ohio, for plaintiff-appellee.

David J. Scacchetti (Argued and Briefed), Cincinnati, Ohio, for defendant-appellant.

Before MARTIN and JONES, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

W. Avery Wilson appeals the sentence imposed upon his plea of guilty to the charge of possessing "in excess of fifty (50) grams" of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988). Wilson challenges the district court's using, as a basis for enhancing his sentence under the relevant-conduct provisions of the Sentencing Guidelines, statements he made to his probation officer. *See* U.S.S.G. § 1B1.3 (1990). We find that the district court was not clearly erroneous in determining that the government showed, by a preponderance of the evidence, that Wilson participated in the drug sales that were discussed in the probation officer's report. Because the court properly considered the sales as relevant conduct, we AFFIRM the sentence.[1]

I

Pursuant to a search warrant, law enforcement officers in Cincinnati, Ohio, entered a house in which Wilson was an occupant. They arrested him, along with others, for possessing crack cocaine with the intent to distribute. At the time of his arrest, Wilson had in his possession $3,014.00. Having obtained and executed another search warrant, officers found in Wilson's vehicle 135 grams of cocaine base and an additional $1,841.00.

Wilson, a first-time offender, was charged in a one-count indictment for violation of 21 U.S.C. § 841 (1988). Aware that the offense carried a mandatory minimum sentence of imprisonment for ten years, 21 U.S.C. § 841(b)(1)(A), he entered a plea of guilty. The court encouraged Wilson to cooperate fully with the investigation of the probation officer who was to complete his presentence report. Although the court

---

1. We do not, in this opinion, discuss the issues dealt with in the opinion concurring in the result, because these issues were not raised in the district court or in this court.

also informed Wilson that he should continue to follow the advice of his counsel, Wilson's attorney was not present during the two presentence conferences.

During one session, upon being asked how he became involved in drug sales, Wilson explained that, approximately two months before his arrest, he bought two ounces of cocaine and sold it at a profit. Doubling his purchase each time, he engaged in three additional drug transactions. Basing her calculations on this information, the probation officer determined that, in addition to the 135 grams found in his possession, Wilson had purchased for resale 850.5 grams of crack cocaine. To determine Wilson's base offense level, pursuant to §§ 2D1.1(a)(3) and 1B1.3(a) of the Sentencing Guidelines, the probation officer attributed to Wilson the possession with intent to distribute 985.5 grams of crack cocaine.

At the sentencing hearing, the district court rejected the probation officer's suggestion that points be added because one individual arrested with Wilson possessed a firearm. After subtracting points for Wilson's acceptance of responsibility, the court, over Wilson's objection to the presentence report, sentenced Wilson at a base level of 34, two points higher than would have been applicable had the court not considered the possession with intent to distribute the 850.5 grams of crack cocaine revealed to the probation officer. The court sentenced Wilson to a 151–month term of imprisonment.

Alleging that the probation officer improperly based her offense-level calculations on "unsubstantiated presumptive sales" of 850.5 grams of crack cocaine, Wilson now appeals his sentence. Wilson submits that the use of information obtained during the presentence conferences violates the Guidelines both in fact and in spirit and is an unjust application of unsubstantiated information. He also asserts that, even if the court followed the officer's

recommendation regarding relevant conduct, the 135 grams of crack cocaine found in his possession should have been deducted from the 850.5 grams.[2]

## II

A district court's findings of fact regarding relevant conduct for the purpose of sentencing will not be disturbed unless they are clearly erroneous. 18 U.S.C. § 3742(e) (1988). Moreover, we give deference to the district court's application of the Sentencing Guidelines to the facts. *Id.*

Wilson does not deny making the incriminatory statements to the probation officer, nor does he contend that the statements fail to support the conclusion that he possessed with intent to distribute more than 500 grams, which is sufficient to support the base offense level upon which he was sentenced. Instead, he presents a policy argument against enhancing his sentence based on conduct admitted to the probation officer in a nonadversarial setting. He contends that doing so discourages an open and honest exchange of information and, contrary to the goals of the Sentencing Guidelines, undermines honesty, uniformity, and proportionality in sentencing. Wilson further contends that it is improper to punish him for possession with intent to distribute amounts of crack cocaine that are not charged in the indictment.

Admittedly, the results achieved through application of the Sentencing Reform Act of 1984 can be harsh. Congress, however, has balanced the risks of disparate sentencing against the possibility, under particular facts, of achieving apparently unjust results. For the sake of uniformity, Congress decided in favor of restricting the discretionary powers of sentencing courts. As a reviewing court, we are constrained by the mandates of Congress and are limited to determining whether the sentencing court clearly erred in its application of the

---

**2.** The Drug Quantity Table in § 2D1.1 of the Sentencing Guidelines specifies a base offense level of 36 when a defendant's activities involve between 500 grams and 1.5 kilograms of cocaine base. Therefore, even if the 135 grams

had been subtracted from the larger figure, the base level of Wilson's offense would have remained unchanged. For this reason, we will not address whether the 135 grams should have been deducted.

Guidelines. In the instant case, we find that it did not.

■ The law in this circuit is clear that to determine a base offense level, a sentencing court may consider conduct involving the possession and sale of " 'uncharged drugs [that] are part of a common scheme or plan.' " *United States v. Miller*, 910 F.2d 1321, 1327 (6th Cir.1990) (quoting *United States v. Mocciola*, 891 F.2d 13, 16 (1st Cir.1989)), *cert. denied*, — U.S. —, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). Such conduct is considered "relevant" for sentencing purposes. Furthermore, *Miller*, a case squarely on point, holds that, as a basis for determining relevant conduct, a court may consider information obtained during a presentence conference. *Id.; see also United States v. Davis*, 919 F.2d 1181, 1186–87 (6th Cir.1990).

■ Additional support for the government's position can be found in *United States v. Walton*, 908 F.2d 1289 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). In *Walton*, this court held that when the exact amount of drugs for which a defendant is responsible cannot be determined, a sentencing court may estimate the quantity so long as the estimate is supported by a preponderance of the evidence. *Id.* at 1302. In the instant case, the probation officer, based on information provided by Wilson, made a reasonable estimate of the amount of crack cocaine that Wilson purchased for resale. When, as here, the defendant admits to involvement in numerous drug transactions, it is not clearly erroneous for the court to determine that a preponderance of the evidence establishes that the defendant has been involved in such transactions.

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

NATHANIEL R. JONES, concurring in the result.

Because this circuit's precedent dictates that we affirm the district court in this case, I am constrained to concur in the result reached by the majority. I write separately, however, to register my vigorous disagreement with this circuit's—and,

for that matter, the majority of the circuits'—treatment of the issue that this case presents.

The defendant argues that the district court erred in using the "relevant conduct" provision to increase his sentence based on statements he made to the probation officer during presentencing interviews. The judge instructed him to cooperate fully and truthfully with the probation officer, who would complete his presentence report. Although the judge also urged him to follow the advice of his lawyer until after sentencing, his lawyer was not present at either of the two interviews with the probation officer, for reasons that are not explained in the record. Thus, without the advice of counsel, he candidly answered all of the officer's questions, and, in the process, made self-incriminating statements.

As the majority correctly points out, this court's precedent does not support the defendant's position. The facts of the instant case are for the most part on all fours with those in *United States v. Miller*, 910 F.2d 1321 (6th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). In *Miller*, the defendant, having been instructed by the court to answer truthfully, was interviewed by a probation officer who was to recommend a sentence to the court. *Id.* at 1323. He participated in the meeting without the benefit of counsel, and he truthfully gave the officer information about his drug-related activities for which he had not been convicted. This information was used against him in sentencing, as in the instant case, and raised the minimum sentence he could receive by four years. *Id.*

The result reached in *Miller* was mandated by Sixth Circuit precedent as well; we previously held that the sentencing guidelines allow a district court to "consider conduct not charged in an indictment for the purpose of determining the base offense level for a defendant's sentence." *Miller*, 910 F.2d at 1329 (Martin, J., concurring) (citing *United States v. Smith*, 887 F.2d 104 (6th Cir.1989), and *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989)); *cf.*

United States Sentencing Commission, *Guidelines Manual*, § 1B1.3(a)(1) (Nov. 1991) (for language of the relevant conduct provision upon which the court's decisions have been based). Thus, in the instant case, the defendant's admission to having sold, in the same course of action, a specific amount of cocaine *over* the amount for which he was convicted, may properly be considered in determining his sentence, in this circuit. Under this court's interpretation of section 1B1.3, the district court did not commit clear error.

It is my position, however, that this court jumped the tracks on this issue as long ago as the *Sailes* decision, and has since been hurtling in a direction in which it should never have gone. Judge Merritt's dissent in *Miller* fully addresses the problems inherent in the current interpretation of this sentencing guidelines provision, which I will reemphasize here briefly.

First, while our decisions have correctly interpreted the language of the sentencing guidelines as written, they have failed to recognize that the Commission, in formulating the Guidelines, has gone further than Congress authorized it to go. The enabling statute for the Guidelines Commission, 28 U.S.C. § 994(*l*)(1) (1988), allows the Commission to aggregate penalties in instances in which the defendant has been *convicted* of multiple offenses. Nothing in the statute authorizes the Commission to permit probation officers or sentencing judges to tack on unconvicted crimes, thereby substantially increasing a defendant's sentence. These unconvicted crimes that a defendant has allegedly committed are not introduced to influence the sentencing court in its discretion to sentence him or her at the higher end of a particular range, but rather to force the court to upwardly readjust the entire sentencing range. Due process is meaningless in a system that allows the government to bypass the safeguards embedded in securing an indictment and conviction or a valid guilty plea simply because the accused has already been convicted of a "related" crime.

Second, under the current law of this circuit, defendants will be deprived of their Fifth and Sixth Amendment rights to have notice of what crime they are accused of committing. *See Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948). This notice requirement is violently breached when a defendant is sentenced for a crime of which he or she was never accused prior to sentencing. At that hearing, he or she is not allowed to confront his or her accusers, and is not innocent until proven guilty beyond a reasonable doubt. *Cf. United States v. Davis*, 919 F.2d 1181, 1188 (6th Cir.1990) (Jones, J., dissenting) (noting that standard for proof used in calculating the base offense level is preponderance of the evidence). Without the advice of an attorney, as in the instant case and in *Miller*, a defendant may not know that one can invoke one's Fifth Amendment right to remain silent during a presentence interview, thereby following the court's instruction to be truthful without incriminating oneself.

· Finally, this interpretation of § 1B1.3(a)(1) will effectively decrease judicial efficiency, a result we can ill afford. First, the potential for being sentenced for unconvicted crimes will be an incentive for defendants to lie, or at least, to not be forthcoming, eventually making fruitless the government's efforts to plea bargain for cooperation from defendants in its related investigations. Second, the number of trials will increase as the chance of a jury acquittal becomes more attractive. Third, the number of habeas petitions might well increase, should this circuit continue to interpret § 1B1.3 in this manner, if and when "the Supreme Court begins to realize the multiple constitutional violations that the current Guidelines procedure raises." *Miller*, 910 F.2d at 1333 (Merritt, C.J., dissenting). This concurrence presents only a brief summary of the dangers to defendants' rights that are involved in this case. It is with an eye on these problems that I am compelled to write separately—even as I, with reluctance, concur.