**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Russell PARTINGTON, Defendant– Appellant.**

**No. 93–1109.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 7, 1993.

Decided April 14, 1994.

· Patricia G. Blake, Office of U.S. Atty., Detroit, MI (argued and briefed), for U.S.

Richard L. Lee, Jr., Sinclair, Mathieu & Lee, Midland, MI (argued and briefed), for Russell Partington.

Before: JONES and SILER, Circuit Judges; and RUBIN, District Judge.*

RUBIN, District Judge, delivered the opinion of the court, in which SILER, Circuit Judge, joined. JONES, Circuit Judge (pp. 719–21), delivered a separate dissenting opinion.

CARL B. RUBIN, District Judge.

Defendant appeals from a conviction and sentence for willfully engaging in the busi-

---

* The Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation.

ness of dealing in firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). Defendant claims that the trial court incorrectly calculated his sentence by taking into consideration his possession of a sawed-off rifle in determining the base offense level under the federal sentencing guidelines.

## I.

Defendant was indicted by a federal grand jury on one count of engaging in the business of dealing in firearms (Count 1); one count of knowingly possessing an unregistered sawed-off rifle in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 (Count 2); and one count of threatening a witness in violation of 18 U.S.C. § 1513 (Count 3). Defendant entered into a plea agreement whereby he agreed to plead guilty to Count 1 of the indictment in exchange for dismissal of the remaining two counts. The parties agreed that the sentence would not exceed the upper limit of the guidelines range found to be applicable by the court. The parties estimated that the guidelines range would be 33 to 41 months, assuming that the base offense level would be 18 after applying U.S.S.G. § 2K2.1(a)(7).[1]

The probation officer recommended in his presentence investigation report that the base offense level should be 26. The officer calculated this offense level by beginning with level 18 under U.S.S.G. § 2K2.1(a)(5), which applies when the firearm involved is a sawed-off rifle, rather than with level 12 under § 2K2.1(a)(7). The officer added six levels because more than 50 firearms were involved and two levels for obstruction of justice based on defendant's threats to witnesses. The resulting guidelines range was 63 to 78 months, which exceeded the five-year statutory maximum for the single count to which defendant had pled guilty.

The trial judge ordered the parties to submit memoranda addressing his concern that

dismissal of the remaining two counts would not adequately reflect the seriousness of the actual offense behavior, and that accepting the agreement might undermine the statutory purposes of sentencing. Both defendant and the United States submitted memoranda in which they contended that the six-level enhancement under § 2K2.1(a)(5) should not be assessed against defendant because only firearms for sale should be considered as relevant conduct in determining the base offense level, and the sawed-off rifle was not intended to be sold. The court determined that the sawed-off rifle should be considered as relevant conduct and that the six-level enhancement under § 2K2.1(a)(5) was therefore appropriate.

At the sentencing hearing, defendant asked the court to accept the Rule 11 Agreement and to impose a sentence of 60 months, a three-month departure below the guidelines range found to be applicable by the court. Defendant reserved his right to contest the six points in issue. The court accepted the agreement and sentenced defendant to 60 months incarceration.

Defendant contends that the sentence should be set aside and his case remanded for resentencing under the appropriate guidelines range of 33 to 41 months. He claims that the offense to which he pled guilty did not involve the sale of the sawed-off rifle and that mere possession of the rifle cannot serve as the basis for the extra six point assessment. The United States asserts that defendant has admitted in his objections to the presentence report that he retained the rifle for parts only, which demonstrates that defendant knowingly possessed the weapon and it was used in his firearms dealings: Thus, his possession of the rifle was part of the same course of conduct or common scheme or plan of illegal firearms dealings.[2]

1. That provision pertains to dealing in firearms without a license.

2. The United States has changed its position since submitting its memorandum on this issue to the trial judge. The United States stated in the memorandum that the rifle was missing a bolt at the time it was seized and did not appear

to be held for sale; that only firearms that were held for sale should be included as "relevant conduct" in light of the offense of conviction (dealing in firearms); and that the rifle should therefore not be considered in calculating the base offense level.

## II.

■ U.S.S.G. § 1B1.3(a) (November 1991) provides that the base offense level shall be determined on the basis of:

(1) all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction, and

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.[3]

Application Note 1(1) to § 1B1.1 defines offense as "the offense of conviction and all relevant conduct under 1B1.3 ... unless a different meaning is specified or is otherwise clear from the context ..." Conduct which forms the basis for counts dismissed pursuant to a plea bargain may be considered in determining the base offense level under the guidelines. *United States v. Smith,* 887 F.2d 104, 106–107 (6th Cir.1989).

■ When a defendant has pled guilty to certain counts of an indictment in exchange for dismissal of other counts, the facts used for sentencing must have "some minimal indicium of reliability beyond mere allegation". *Id.* at 108 (quoting *United States v. Baylin,* 696 F.2d 1030, 1040 (3d Cir.1982)); *United States v. Gibson,* 985 F.2d 860, 863 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2981, 125 L.Ed.2d 678 (1993) (quoting *United States v. Robison,* 904 F.2d 365, 371 (6th Cir.), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990)). In addition, proof presented at sentencing hearings must be established by a preponderance of the evidence. *Robison,* 904 F.2d at 371 (citing *United States v. Silverman,* 889 F.2d 1531, 1535 (6th Cir.1989)); *Gibson,* 985 F.2d at 863.

■ The trial court's determination that certain acts are part of a common scheme or plan is a factual determination that must be upheld on appeal unless the finding is clearly erroneous. *See United States v. Miller,* 910 F.2d 1321, 1327 (6th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). Whether the facts found by the district court warrant the application of a particular guideline provision is a legal question and is to be reviewed *de novo* by the appellate court. *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991) (citing *United States v. Sanchez,* 928 F.2d 1450, 1458 (6th Cir.1991)).

## III.

■ The precise issue before the court is a novel one. However, the court has on several prior occasions addressed the issue of what constitutes "relevant conduct" in other contexts, particularly in cases involving drug distribution charges. The applicable law provides that in such cases,

[Q]uantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

U.S.S.G. § 1B1.3, comment. (backg'd.) When determining the base offense level in drug cases, all drug quantities, including quantities charged in dismissed counts and uncharged quantities, that were part of the same course of conduct or common scheme are taken into account. *Miller,* 910 F.2d at 1327; *Smith,* 887 F.2d at 107. Thus, this court has upheld inclusion of drug amounts which a defendant admits to having sold prior to his arrest. *Miller,* 910 F.2d at 1327. The court has also upheld inclusion of all drugs found on premises used for drug distribution in the sentencing of a defendant who pled guilty to possession with intent to distribute, regardless of whether the defendant knew of the presence of all such drugs. *United States v. Sailes,* 872 F.2d 735 (6th Cir.1989). The trial judge has the discretion to consider "any and all" evidence of the quantity of drug involved. *United States v. Moreno,* 899 F.2d 465, 474 (6th Cir.1990).

---

**3.** U.S.S.G. § 3D1.2(d) provides that counts shall be grouped together "... [when] the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

## IV.

The law regarding firearms is also pertinent to this discussion. Defendant was convicted of a violation of 18 U.S.C. § 922(a)(1)(A), which provides in part:

It shall be unlawful ... for any person ... except a ... licensed dealer to engage in the business of ... dealing in firearms....

For a definition of "firearm," under the National Firearms Act of 1968, it is necessary to refer to 26 U.S.C. § 5845(a). That section defines "firearm" as follows:

The term 'firearm' means ... (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length....

Title 26 U.S.C. § 5845(h) defines "unserviceable firearm" as follows:

The term 'unserviceable firearm' means a firearm which is incapable of discharging a shot by means of an explosive and *incapable of being readily restored to a firing condition.* (Emphasis added).

## V.

▉▉▉ The court discerns no pertinent distinctions between the possession of illegal drugs and the possession of firearms for purposes of applying the sentencing guidelines. Although the type of contraband differs, the same rationale applies. *See United States v. Dennis,* 926 F.2d 768, 769 (8th Cir.1991). In drug cases, the guidelines are based largely on the quantity involved. The logic supporting sentence enhancement for relevant conduct in such cases is that although a defendant may possess few or no drugs at the time of his arrest, the defendant may have participated in a course of conduct involving large amounts of drugs. *United States v. Kappes,* 936 F.2d 227, 230 (6th Cir.1991). By taking into account the entire amount involved, the resulting sentence will more accurately reflect the seriousness of the offense and the extent of the defendant's involvement in a course of criminal conduct.

Similarly, the guidelines applicable to firearms depend largely on quantity. As in drug cases, a defendant may possess few or no firearms at the time of his arrest, but may have been involved in dealing a large quantity of firearms. Accordingly, the same logic supporting sentence enhancement for relevant conduct in drug cases applies to firearms cases.

Further, the same rationale which supports including drugs found on the premises where drug transactions have occurred as relevant conduct supports inclusion of firearms that a defendant possesses, but which he has not actually offered for sale, as relevant conduct to the crime of dealing in firearms. In interpreting section 1B1.3, Judge Kennedy has stated that it is immaterial whether the criminal activity included as relevant conduct is an inchoate crime that is not of the same character as a substantive possession offense, so long as the criminal activity is part of the same course of conduct as the crime of conviction. *United States v. Davern,* 970 F.2d 1490, 1494 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993). Accordingly, the court in *Davern* found that a crime of attempt or conspiracy could be considered as relevant conduct to a possession offense. *Id.* Similarly, possession of a firearm may be considered relevant conduct to the crime of dealing in firearms without a license, regardless of whether defendant actually attempted to sell the firearm.

▉▉▉ Finally, the court notes that pursuant to the guidelines, possession of a firearm during the commission of a drug offense creates a presumption that the possession is connected with the drug offense. *United States v. Chalkias,* 971 F.2d 1206, 1216 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992) (citing *Moreno,* 899 F.2d at 470). The defendant may overcome this presumption only by showing that it is "clearly improbable that the firearm was connected to the drug offense." *Id.* (quoting U.S.S.G. section 2D1.1, comment. (n. 3)). The probability of a connection between a firearm found in the location where illegal firearm dealings have occurred and the crime of firearm dealings is just as strong, and arguably stronger, than the probability of a

connection between possession of a firearm and a drug transaction. In light of the presumption applied in drug cases, it would be anomalous indeed if the court were to fail to recognize the strong likelihood of a connection between possession of a firearm and the crime of conviction in the context of illegal firearm dealings.

It does not necessarily follow that possession of a particular firearm must be included as relevant conduct whenever a defendant is convicted of dealing in firearms. There may be situations where the facts demonstrate that a defendant possessed a firearm for a legitimate purpose unconnected to any criminal activity, and that his possession of the firearm was therefore not part of the same course of conduct as the crime of conviction. However, where the facts support a contrary finding, it is appropriate that the firearm be taken into account in determining the base offense level.

## VI.

■ The trial court found that the defendant did violate 18 U.S.C. § 922 and did possess a "firearm" listed under 26 U.S.C. § 5845(a). Neither decision is clearly erroneous. Thus, the sole issue before the court is whether the trial court's determination that defendant's possession of the rifle constitutes relevant conduct is clearly erroneous.

The trial judge made the following findings with regard to the sawed-off rifle:

One of the things that was found when the agents executed a search warrant was this sawed-off .22 caliber bolt action rifle under the counter, at the very location where a number of the transactions had been either consummated or at least talked about.

I recognize that the weapon did not have a bolt in it at the time it was found and I recognize also it is an old weapon which carries the name of J.C. Higgins, which the Court notes is a not terribly highly honored brand name which used to be marketed by Sears Roebuck, and I think that brand name was abandoned many years ago so the weapon is no doubt old. But in spite of that, in spite of the fact that it did not have a bolt, it is clear from subsequent

investigation it was in operating condition, because it was test fired upon being examined, a bolt was readily available for it putting it right back in operating condition, and it worked. So it is not as though it was a pile of rubble. It was a properly functionable firearm.

The court concluded that possession of the sawed-off rifle was an act which occurred during the offense of conviction and that it was part of the offense, regardless of the fact that it was not for sale. The court found that although the weapon was not actively marketed by defendant during his discussion with DEA agents prior to his arrest, he possessed the weapon, and the offense of conviction was intertwined with the possession and sale of firearms. (Transcript of status conference, August 20, 1993).

The trial judge's factual determination that possession of the sawed-off rifle constitutes relevant conduct is not clearly erroneous. Defendant need not have actually attempted to sell the sawed-off rifle to DEA agents, nor have kept the rifle in operating condition, in order for it to be considered part of his firearms dealings. It is sufficient that the rifle was in the location where defendant conducted some of his illegal firearms transactions and that it could easily be made operable. Under these circumstances, possession of the rifle, a crime with which defendant was charged and which is covered by the same guideline section as the offense of conviction, could clearly be found to be part of the same course of conduct as the crime of dealing in firearms. Thus, a preponderance of the evidence supports inclusion of the rifle in the determination of the base offense level.

## VII.

The trial judge did not clearly err by finding that defendant's possession of the sawed-off rifle was relevant conduct. Based on his finding, he correctly applied U.S.S.G. § 2K2.1(a)(5) in calculating the base offense level. For these reasons, defendant's sentence is AFFIRMED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

Today the majority takes the ill-advised step of extending the "relevant conduct" law

of this circuit, previously applicable only in drug cases, to cases in which a defendant has been convicted solely of firearms offenses. Because I cannot find any sound justification for the court's initial decisions in this area, I cannot support today's expansion. Accordingly, I dissent.

In today's opinion, the court allows Defendant Partington to be sentenced for conduct with which he has not been charged. While this is not an uncommon occurrence in the realm of drug offenses, this court has not to date applied this circuit's relevant conduct case law to an offense exclusively involving firearms. In support of today's expansion the majority asserts that "[t]he court discerns no pertinent distinctions between the possession of illegal drugs and the possession of firearms for purposes of applying the sentencing guidelines." However, I continue to believe that our previous treatment of the relevant conduct provisions of the Sentencing Guidelines is unjustified and should not now be used to increase the sentences of defendants in firearms cases. As I noted in my concurring opinion in *United States v. Wilson*, 954 F.2d 374, 378 (1992), "[i]t is my position ... that this court jumped the tracks on this issue as long ago as the [*United States v.*] *Sailes* decision, and has since been hurtling in a direction in which it should never have gone."

The basis for my disagreement with this court's relevant conduct precedent, and thus with the result reached in the instant case, has been addressed at length in both my concurrence in *Wilson* and in Chief Judge Merritt's dissent in *United States v. Miller*, 910 F.2d 1321, 1329–33 (6th Cir.1990), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). However, I believe that it is my duty to once again assert my position in light of this court's continued adherence to an error of great magnitude.

Congressional authorization of the Sentencing Commission's power is codified at 28 U.S.C. §§ 991–998. Section 994(*l*)(1)(A) authorizes the Commission to "insure that the guidelines promulgated ... reflect ... the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant is convicted of multiple offenses committed in the same course of conduct." Thus, the Commission is authorized only to allow incremental punishment for crimes of which the defendant has been convicted. The Commission has no authority to allow uncharged conduct to result in enhanced sentences. Yet in spite of § 994(*l*)(1)(A)'s obvious limitation on the Commission's authority, this court has repeatedly affirmed sentences reflecting uncharged conduct.

In addition to being unauthorized, the inclusion of uncharged conduct in a defendant's base offense level is counterproductive to the goal of judicial economy, for as the benefits of "copping a plea" are eroded by the addition of unpredictable amounts of uncharged conduct, more and more defendants will choose to take their chances with trial. Furthermore, the court's acceptance of uncharged conduct in a defendant's base offense level encourages dishonesty. Defendants, aware of the increased punishment to which they may be exposed, will decline to "come clean" with pre-sentence investigators and probation officers.

More troubling still, the inclusion of uncharged conduct in a defendant's base offense level encourages prosecutors to try a defendant on those charges upon which a conviction is most easily secured. Even if a prosecutor is unable to prove a defendant's culpability for uncharged crimes, under the prevailing law of this circuit, the prosecutor may be secure in the belief that the defendant will nevertheless be punished for the uncharged behavior. I cannot condone this inevitable consequence of the circuit's current law, for if the prosecution's objective is to see that a defendant is punished for particular conduct, it should be required to present a case that will achieve this result. To allow anything less enables the prosecution to achieve through the "back door" what it could not achieve through direct proof at trial. This is neither a just result, nor one that the courts should encourage.

Furthermore, assuming arguendo that this circuit's approach to relevant conduct has merit, the majority nevertheless misapplies its own misbegotten "related conduct" doctrine in the instant case. The facts of this case do not support the inclusion at sentenc-

ing of Partington's possession of the sawed-off rifle.

Defendant Partington was convicted of the unlicensed sale of firearms. Thus, to be included as relevant conduct at sentencing, Partington's possession of the sawed-off rifle must have been a part of the same course of conduct as his firearm sales. *United States v. Smith*, 887 F.2d 104, 106 (6th Cir.1989). Contrary to the majority's position, I find that the facts of this case do not support that conclusion.

It is undisputed that the unlicensed sale of firearms did not involve the sale of sawed-off weapons. As the government acknowledged in its sentencing memorandum: "[w]hile the government believes that any firearm held for sale should be included in the calculation of the proper guideline range, the evidence does not clearly support the proposition that the sawed-off rifle was held for sale." J.A. at 30. Compared with the charged offense the asserted relevant conduct involved a different type of weapon (sawed-off weapons rather than standard firearms); different conduct on Partington's part (simple possession of a firearm rather than the active sale of weapons); and different people (only Partington was involved in the possession while others were involved in the sale). *See United States v. Lewis*, 987 F.2d 1349, 1356 (8th Cir.1993). In light of these undisputed facts, even if I were to apply the majority's "relevant conduct" doctrine, I could not find, as the majority does, that Partington's possession of the sawed-off rifle was a part of the same course of conduct as his unlicensed sale of firearms.

Because I firmly believe that the majority opinion today marks an unfortunate expansion of this circuit's relevant conduct law and because the majority misapplies its own doctrine, I dissent.