**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jharoland HOCKETT, Defendant–**
**Appellant.**

**No. 00–6064.**

United States Court of Appeals,
Sixth Circuit.

May 13, 2002.

164

Before MARTIN, Chief Circuit Judge; COLE, Circuit Judge; SHARP, District judge.*

PER CURIAM.

Jharoland Hockett appeals his sentence following his guilty plea for two counts of cocaine distribution in violation of 21 U.S.C. § 841(a)(1). For the following reasons, we AFFIRM his sentence.

I.

Defendant Jharoland Hockett sold 3.1 grams of cocaine to an undercover agent on March 19, 1999. He sold another .8 grams of cocaine to the same agent a few weeks later, on April 2. Shortly after the second sale, Tim Lane, director of the local Drug Task Force, arrested Hockett on a state arrest warrant. Lane advised Hockett of his *Miranda* rights, and Hockett asked to speak to his lawyer. His lawyer advised him to remain silent, and Hockett told Lane he did not wish to speak. Lane ended the interview. Subsequently, the state charges were dismissed and, on September 14, a federal indictment was procured. Hockett was federally indicted for two counts of distributing cocaine, the first for the March 19 sale, and the second for the April 2 sale.

On January 11, 2000, Lane arrested Hockett again; this time, for the federal

* The Honorable G. Kendall Sharp, United States District Court Judge for the Middle District of Florida, sitting by designation.

charges. After the arrest, Lane contacted Hockett's lawyer who informed Lane that he was no longer representing Hockett. Lane relayed this news to Hockett.

Later that evening, Lane drove Hockett from the Lincoln County jail to the Bedford County Jail. While they were in the car, Lane gave Hockett his *Miranda* rights, and then asked him if he understood his rights. Hockett said he understood his rights, and Lane asked him if he wished to speak. In response, Hockett said he was willing to waive his rights, and he disclosed lots of information about his prior drug dealings. At no point did he say he wished to speak to a lawyer.

During the drive, Hockett told Lane that in 1996 he became involved in a cocaine distribution organization called the "Dog Pound." The members of the Dog Pound would send a courier to Nashville, Tennessee with a pool of the members' money. The courier bought the cocaine in Nashville, and then distributed it to the contributors. Hockett had been the courier on two occasions. On the first trip, he brought $3000 to Nashville and purchased four to five ounces of cocaine. On the second trip, he took approximately $7000, but was robbed while he was there.

Hockett decided to leave the Dog Pound, and he sold cocaine on his own from 1997 through 1999. He told Lane that during those three years he sold about twenty-four ounces of cocaine; eighteen of powder, and six of crack cocaine.

When they arrived at the Bedford County jail, Lane told FBI Special Agent Richard Poff, in Hockett's presence, that he had advised Hockett of his rights and Hockett had waived them. Then he relayed to Poff, still in Hockettt's presence, the information that Hockett had told him on the drive.

On March 9, 2000, Hockett pleaded guilty to two counts of cocaine distribution. The pre-sentence report advised that Hockett be held responsible for selling a total of twenty-four ounces of cocaine; eighteen of cocaine powder and six of crack cocaine. Hockett objected to the drug quantity recommendations in the pre-sentence report. At the sentencing hearing on July 10, the district court found that Hockett had distributed twenty-four ounces of cocaine. The court sentenced him to nine years in prison on each count to run concurrently, and placed him on supervised release for a term of three years for each count to run concurrently.

On appeal, Hockett argues that the sentencing court should not have considered his admission about the quantity of drugs he had sold. Hockett argues, first, that Lane violated his Fifth Amendment right to counsel by reinitiating interrogation after Hockett had asserted his right to speak to his attorney at the time of his first arrest; second, that his waiver of his *Miranda* rights was not knowing and intelligent, and; third, that in determining "relevant conduct" to the offense of conviction, the district court erroneously calculated the quantity of drugs he had distributed. None of Hockett's arguments are persuasive.

## II.

Hockett's assertion of his right to counsel at the time of his first arrest did not preclude Lane from questioning him further, months later, at the time of his second arrest.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." Prior to custodial interrogation, an accused must be informed of his Fifth Amendment right to remain silent, to have an attorney

present during questioning, that an attorney will be appointed if he cannot afford one, and that anything he says may be used against him. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If the suspect states that he wants an attorney, the police must stop interrogating the suspect until an attorney is present. *Id.* at 444–45. In addition, under *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), if an accused expresses a desire to deal with the police through counsel, he "is not subject to further interrogation ... until counsel has been made available to him." And even after the accused meets with counsel, an officer who reinitiates interrogation, violates the rule set out in *Edwards,* and in so doing, violates the Fifth Amendment. *Minnick v. Mississippi,* 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990).

■ Hockett claims that because he asserted his right to counsel at the time of his first arrest, Lane was precluded, under *Edwards,* from questioning him further, at the time of his second arrest. We have held, however, that *Edwards* does not apply unless the suspect is in continuous custody. *Kyger v. Carlton,* 146 F.3d 374, 380 (6th Cir.1998). The rule in *Edwards* stems from a concern regarding coercive custodial questioning that deprives a suspect of the right he has invoked to have an attorney present while being questioned. *Id.* at 381. This concern "simply is not implicated when a suspect is not in continuous custody." *Id.; see also Dunkins v. Thigpen,* 854 F.2d 394, 397 (11th Cir.1988), *cert. denied,* 498 U.S. 1059, 109 S.Ct. 1329, 103 L.Ed.2d 597 (1989); *McFadden v. Garraghty,* 820 F.2d 654, 660 (4th Cir. 1987); *United States v. Fairman,* 813 F.2d 117, 125 (7th Cir.1987), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987); *United States v. Skinner,* 667 F.2d

1306, 1309 (9th Cir.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983). Therefore, a defendant cannot claim an *Edwards* violation unless he was in custody from the time he asserted his Fifth Amendment right to counsel, until the time the officer reinitiated interrogation.

Because Hockett was not in continuous custody, officer Lane did not violate the rule set out in *Edwards.*

### III.

Since *Edwards* did not preclude further questioning, we must decide only whether Hockett waived his Fifth Amendment rights when he admitted the quantity of drugs he had sold. *Miranda,* 384 U.S. at 479. In order for a waiver to be upheld, the United States must show, by a preponderance of the evidence, that the defendant's waiver was made voluntarily, knowingly and intelligently. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). There are two elements to this inquiry. First, the waiver must be voluntary, in the sense that it was the product of free and deliberate choice, rather than coercion. *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Second, the waiver must have been made with full awareness of the rights being waived. *Id.* Only if the "totality of the circumstances surrounding the interrogation" reveal an uncoerced choice and the requisite level of comprehension, may a court properly conclude that the *Miranda* rights were waived. *Id.*

■ Because Hockett does not argue that he was coerced, pressured or intimidated into waiving his rights, the only question is whether his waiver was knowing and intelligent. Hockett is of average intelligence, and had two years of a college education. When Lane told him his *Miranda* rights in the car, Hockett said

that he understood his rights. That is, he understood that he had the right to remain silent, to have an attorney present during questioning, if he could not afford an attorney, one would be provided to him, and that anything he said could be used as evidence against him. He said he was willing to waive these rights. When Hockett and Lane arrived at the Bedford County jail, Lane told Poff, in Hockett's presence, that he had given Hockett his *Miranda* rights and Hockett decided to waive them. Hockett nodded to Poff, affirming Lane's story. Moreover, Hockett had been arrested several times before, and on his last charge, when he invoked his Fifth Amendment right to counsel, questioning ceased.

Hockett does not allege that he did not understand the privilege guaranteed by the Fifth Amendment, nor does he allege that he misunderstood the consequences of speaking freely. Instead, he argues that his waiver was not knowing and intelligent because counsel was not available to him after Lane gave him his *Miranda* rights, and before he admitted his prior drug dealings. In other words, Hockett seems to argue that a suspect cannot knowingly and intelligently waive his *Miranda* rights unless counsel is accessible to him prior to his decision to speak. Hockett's argument implies that it is not possible for a suspect to understand his rights, and decide to waive them.

Hockett's argument runs counter to well established legal precedent as well as common sense. The Supreme Court's fundamental aim in designing the *Miranda* warnings was to assure that the suspect understood his Fifth Amendment rights prior to custodial interrogation. *Miranda,* 384 U.S. at 468; *see also Colorado v. Spring,* 479 U.S. 564, 572, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). *Miranda* presupposes that a suspect is capable of understanding his Fifth Amendment privilege after he has just been told what it is. *See* 384 U.S. at 468. Likewise, according to *Miranda,* once a suspect understands his rights, he may make an informed and intelligent decision to waive them. *Id.* at 479; *Moran,* 475 U.S. at 412; *Colorado,* 479 U.S. at 168; *Kyger,* 146 F.3d at 380.

Because Hockett does not claim that he misunderstood his rights or that his waiver was coerced, we uphold his waiver. *Id.* It was made voluntarily, knowingly and intelligently.

### IV.

The next issue is whether in determining the "relevant conduct" to the offense of conviction, the district court erroneously found that Hockett distributed twenty-four ounces of cocaine.

Whether conduct extraneous to an offense of conviction is considered "relevant conduct" under the United States Sentencing Guidelines is reviewed for clear error. *United States v. Hahn,* 960 F.2d 903, 907 (9th Cir.1992).

In a drug distribution case, to calculate a defendant's base offense level under the Sentencing Guidelines, the sentencing court must consider as "relevant conduct," the "quantities and types of drugs not specified in the count of conviction [which] are ... part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Miller,* 910 F.2d 1321, 1326–7 (6th Cir.1990) (quoting U.S.S.G. § 1B1.3(a)(2)). The sentencing court must base its "relevant conduct" approximation on reliable information, and the government bears the burden of proving the conduct by a preponderance of evidence. *United States v. Meacham,* 27 F.3d 214, 216 (6th Cir.1994); *United States v. Zimmer,* 14 F.3d 286, 290 (6th Cir.1994). While the sentencing court need not consider the rules of evidence when making this determination, the evidence must have

"sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

In order to be considered "part of the same course of conduct," the offenses must be "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, application note 9(B). There are three factors which the sentencing court considers to determine whether the offenses were "part of the same course of conduct." These are (1) the degree of similarity, (2) the regularity or repetition of the offenses, and (3) the time intervals between the offenses. *Id.* These factors are balanced by a sliding scale approach, such that a strong showing of one factor may compensate for the absence of another factor. *Id.*

■ At the sentencing hearing, Lane and Poff both testified that Hockett had admitted selling eighteen ounces of cocaine powder and six ounces of crack cocaine from 1997 through 1999. The district court found their statements reliable, and Hockett offered no evidence that his admissions were not true. In addition, several witnesses' testimony corroborated the agents' statements. Barrett Lewis testified that he purchased cocaine powder from Hockett for one and a half to two years during 1997 to 1999, making approximately forty to fifty purchases. He usually purchased a quarter gram to an eighth of an ounce. Thomas Summers testified that he bought a half ounce of crack cocaine from Hockett twice. Carlos Riley testified that he bought cocaine powder from Hockett about ten times in 1999. Tim Taylor testified that he accompanied Hockett to Nashville when Hockett was attempting to purchase cocaine, but was robbed. Finally, Hockett sold a total of 3.9 grams of cocaine powder to an undercover agent on two occasions.

Based on this testimony, the sentencing court determined that the government showed by a preponderance of the evidence that Hockett sold eighteen ounces of cocaine powder and six ounces of crack cocaine between 1997 and 1999. Such continuous and repetitive drug dealing qualifies as part of "the same course of conduct" to the offense of conviction under the Sentencing Guidelines. *See Miller*, 910 F.2d at 1327; *United States v. Partington*, 21 F.3d 714, 717 (6th Cir.1994); *United States v. Sailes*, 872 F.2d 735, 738–39 (6th Cir.1989). Therefore the district court's "relevant conduct" calculation was not clearly erroneous.

V.

We conclude that all of Hockett's arguments are meritless. Therefore, we AFFIRM his sentence.