819 F.2d 1142
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Earl Thurman GLASS, Defendant-Appellant.
 No. 86-5217.
 United States Court of Appeals, Sixth Circuit.
 June 5, 1987.
 
 Before MERRITT, WELLFORD and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Glass was a public official and the Executive Director of the Office of Licenses and Permits for the City of Louisville. He was in charge of the regulation and licensing of establishments selling liquor or providing adult entertainment ("massage parlors") in Louisville. He was indicted on six (6) counts of violations of the Hobbs Act, Title 18, United States Code, Section 1951. Count 1 charged appellant with extorting $800 from Joan Goren, Steve Perryman and Lacey Victoria. Count 2 charged appellant with extorting a .38 caliber, Smith & Wesson pistol worth $275 from Joan Goren. Count 3 charged appellant with extorting $200 from Charles Shephard, d/b/a Hilltop Bar and Grill. Count 4 charged appellant with extorting $500 from Ray Poole. Count 5 charged appellant with extorting $12,000 from Thomas Stephens and the San Antonio Inn. Count 6 charged appellant with extorting $925 from Ethel Hild. All charges involved misuse of his authority as a city official.
 
 I.
 
 2
 Defendant claims prejudice because the government delayed disclosure to him of Donald Cannon's exculpatory grand jury testimony. The government did not supply defendant Cannon's name as a potential witness until the eve of trial and did not furnish his address until after jury selection, or his grand jury testimony until five days into the trial. The government made Cannon available to defendant during the trial only after a motion was made for a judgment of acquittal based upon a Brady violation.[1] Glass argues that these actions made it impossible for the defense adequately to investigate or to develop additional evidence from Cannon's grand jury testimony. The district court refused to find a Brady violation because a subpoena was never issued for Cannon nor was an attempt made by the defense to procure Cannon by means of a material witness warrant.
 
 
 3
 Under the Brady rule, a prosecutor must disclose evidence that is both favorable to the accused and "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). See also California v. Trombetta, 467 U.S. 479, 485 (1984); United States v. Bagley, 105 S.Ct. 3375, 3379 (1985). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt", but a violation will not be found unless the "omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." Trombetta, 467 U.S. at 485; Bagley, 105 S.Ct. at 3380, quoting United States v. Agurs, 427 U.S. 97, 108 (1976).
 
 
 4
 In Agurs, the Court defined the standard of materiality under Brady as whether the "omitted evidence creates a reasonable doubt that did not otherwise exist." Agurs, 427 U.S. at 112. The entire record is to be evaluated in making such determinations. Id. The Bagley Court restated the test as "if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." Bagley, 105 S.Ct. at 3381. In a footnote the Agurs court rejected the notion that the standard
 
 
 5
 should focus on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, rather than the materiality of the evidence to the issue of guilt or innocence.... Such a standard would be unacceptable for determining the materiality of what has been generally recognized as "Brady material" for two reasons. First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge.
 
 
 6
 Agurs, 427 U.S. at 112 n. 20.
 
 
 7
 We have previously held that the "principles announced in Brady do not apply, in general, to tardy disclosures of exculpatory information but to complete failures to disclose.... If previously undisclosed evidence is disclosed during trial, no Brady violation occurs unless the defendant has been prejudiced by the delay in disclosure." United States v. Holloway, 740 F.2d 1373, 1381 (6th Cir.), cert. denied, 469 U.S. 1021 (1984).
 
 
 8
 A Brady violation based on the inability adequately to investigate or to develop additional evidence is not sufficient to establish prejudice per se. See generally United States v. George, 752 F.2d 749, 756 (1st Cir.1985); Richards v. Solem, 693 F.2d 760, 765 (8th Cir.1982), cert. denied, 461 U.S. 916 (1983); United States v. Kampiles, 609 F.2d 1233, 1248-49 (7th Cir.1979), cert. denied, 446 U.S. 954 (1980). The Turner[2] decision cited by appellant, does not stand for the proposition that materiality "is measured by the effect of its suppression upon preparation for trial." The Turner case did distinguish the Agurs materiality test, however, and adopted a sliding scale materiality varying with the degree of culpability of the government. Turner is distinguishable in that it involved actual perjury or misrepresentation by a government agent concerning a leniency agreement, not a belated furnishing of a witness whose testimony may be deemed to be exculpatory.
 
 
 9
 In George the court held that the Brady rule is not violated where the evidence is made available to defendants during trial. The court stated that the "relevant standard of materiality does not focus on the trial preparation, but instead on whether earlier disclosure would have created a reasonable doubt of guilt that did not otherwise exist. United States v. Agurs, supra, 427 U.S. at 112 n. 20, 96 S.Ct. at 2401 n. 20; United States v. Behrens, supra, 689 F.2d at 158; and United States v. Alberico, supra, 604 F.2d at 1319." United States v. George, 778 F.2d 556, 561-62 (10th Cir.1985).
 
 
 10
 Defendant never explained why he did not subpoena Cannon or request a continuance when disclosure was made at trial if, in fact, Cannon were deemed to be a key witness. Nor is the government required under Brady to furnish a defendant evidence which, with any reasonable diligence, he can obtain for himself. United States v. Davis, 787 F.2d 1501, 1505 (11th Cir.), cert. denied, 107 S.Ct. 184 (1986); United States v. McKenzie, 768 F.2d 602, 608 (5th Cir.1985), cert. denied, 106 S.Ct. 861 (1986). In any event, the witness was finally, if belatedly, procured and did testify at trial. Under the circumstances of this case, there was no reversible error by the district court in overruling the motion for acquittal on this basis.
 
 II.
 
 11
 Defendant argues that under Fed.R.Evid. 404(b)[3] the district court erred in admitting into evidence the "account record" of Debbie Inman indicating a $200 prostitution transaction with Glass. He claims unfair surprise in allowing introduction of this evidence. The district court ruled in a pretrial order that "[w]e do not read Rule 12(b)(2)[4] [sic] as authorizing the Court to grant carte blanche authority to defendant to discover all evidence in advance of trial, including F.R.Evid. 404(b) evidence."
 
 
 12
 The district court judge has a range of discretion concerning the admissibility of evidence under Rule 404(b). United States v. Fraser, 709 F.2d 1556, 1559 (6th Cir.1983); Hammann v. Hartford Accident and Indemnity Co., 620 F.2d 588, 589 (6th Cir.1980); United States v. Czarnecki, 552 F.2d 698, 702 (6th Cir.), cert. denied, 431 U.S. 939 (1977). The central question is whether the district court "abused its discretion in determining that the probative value of the evidence outweighed its potential prejudicial effect." Czarnacki, 552 F.2d at 702. See also United States v. Largent, 545 F.2d 1039, 1043 (6th Cir.1976), cert. denied, 429 U.S. 1098 (1977).
 
 
 13
 Defendant objected to the evidence on the basis of relevancy, but did not raise Federal Rules of Evidence 404(b) as a basis for its exclusion. A general objection, such as one based on irrelevancy is not sufficient if the purpose is to invoke the requirements of Rule 404(b) which deals with "other crimes, wrongs, or acts." Objections to the admission of evidence must be stated specifically, and failure to make a specific objection precludes a party from raising such objection on appeal. See J. Weinstein & M. Berger, Weinstein's Evidence Sec. 103, at 103-24 (1986); United States v. Johnson, 722 F.2d 407, 409 (8th Cir.1983); Jay Edwards, Inc. v. New England Toyota Distributor, 708 F.2d 814, 823 (1st Cir.), cert. denied, 464 U.S. 894 (1983); Bryant v. Consolidated Rail Corp., 672 F.2d 217, 220 (1st Cir.1982).
 
 
 14
 Although defendant did not raise the Rule 404(b) objection at trial, this court will still consider defendant's argument under the plain error standard of review. Fed.R.Evid. 103; see Helminski v. Ayerst Laboratories, 766 F.2d 208, 211 (6th Cir.), cert. denied, 106 S.Ct. 386 (1985). The plain error doctrine is to be used "only in exceptional circumstances" and only where the error is so plain that " 'the trial judge and prosecutor were derelict in countenancing it.' " United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.), cert. denied, 107 S.Ct. 269 (1986) (quoting United States v. Frady, 456 U.S. 152, 163 (1982)).
 
 
 15
 The record does not reflect whether the government, as it claims, actually notified defendant two months prior to trial of the intent to use the Inman proof. Defendant, however, acknowledged receiving Inman's date book, suggesting a prostitution date, as part of the discovery material furnished to the defense prior to trial. Although the evidence is prejudicial to Glass, it is relevant to show receipt of benefits from Goren with whom Inman was associated. The evidence of the prostitution date does, therefore, tend to show a scheme or plan of receipt of favors from Goren in return for Glass' permitting continuation of her business license improperly. The evidence is therefore relevant. We find no reversible error with respect to this evidentiary ruling.
 
 III.
 A.
 
 16
 Defendant argues that the evidence was insufficient to find the defendant guilty beyond a reasonable doubt on counts two and four of the indictment. The conviction must be upheld "if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." Burks v. United States, 437 U.S. 1, 17 (1978); United States v. Robinson, 763 F.2d 778, 784 (6th Cir.1985). In determining the sufficiency of the evidence, it is not necessary that each element of the crime be supported by direct evidence. "[C]ircumstantial evidence alone can sustain a guilty verdict and ... to do so, circumstantial evidence need not remove every reasonable hypothesis except that of guilt." United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984) (emphasis added); see also United States v. Johnson, 741 F.2d 854, 856 (6th Cir.1984).
 
 
 17
 Count two of the indictment charged that defendant extorted "a .38 caliber, Smith & Wesson pistol worth $275, more or less, from Joan Goren." Defendant argues that no proof was presented that Goren told Glass that she bought the gun. Goren testified that she purchased a gun for Glass after his attorney, Bruce Zalman, allegedly expressed Glass' displeasure to her about receiving a less expensive Christmas gift from Goren than his secretary had received. A pawn shop owner testified that the gun was paid for by Goren and that he gave the gun to Glass after a call to Zalman. Goren testified that she never actually saw Glass accept the gun, but that her business benefitted from the gift because of his institution of a special temporary licensing procedure permitting new employees to begin work without waiting the required six to eight weeks. The business also benefitted because Glass' initials on Goren's license permitted her to operate the business illegally despite her previous felony conviction.
 
 
 18
 Defendant asserts that since the gun was purchased on November 9, 1983, the purchase could not have been made as alleged, for the purpose of appeasing Glass' dissatisfaction in receiving a less expensive Christmas gift than an employee. The pawn shop owner testified that Glass picked up the gun on November 9, 1983 and Goren paid for it a week or more later. Glass' secretary testified that she had a conversation with Glass about his dissatisfaction with her more expensive Christmas gift "shortly before Christmas, within just a few days of Christmas of '83." There was a conflict in establishing the date and circumstances, but there was sufficient proof, if believed, about furnishing the gun to Glass through Goren.
 
 
 19
 Count four of the indictment charged that Glass extorted "$500, more or less, from Ray Pool, d/b/a LaCommode Tavern, Louisville, Kentucky." Appellant asserts that no evidence was shown that Glass or anyone acting on behalf of Glass received money from Poole. Poole testified that he was contacted by an unknown person about the money in respect to a citation against his establishment, and that later two persons met him at a bar to pick up the check. In a later meeting with Glass in his office, Poole was told that Glass was "going to spank [his] hand." Poole believed that he received a sentence of probation in respect to the citation. An employee of Glass testified that the files contain no indication that Poole's business was fined $500.
 
 
 20
 We conclude that despite discrepancies in the testimony under count two and the circumstantial nature of evidence as to count four, the evidence viewed in the light most favorable to the government was sufficient under these counts to uphold the jury's decision.
 
 B.
 
 21
 Defendant further contends that the government failed to prove that the benefits Glass received were under color of official right.[5] We held in United States v. Butler, 618 F.2d 411, 418 (6th Cir.), cert. denied, 447 U.S. 927 (1980), that "a showing that the motivation for the payment focuses on the recipient's office, regardless of who induces the payments, is sufficient to convict under the Hobbs Act." We stated further "that any wrongful use of a public official's power for private personal gain is proscribed by the Hobbs Act." Id. at 419.[6] We have held that "[r]easonable prospects of success" in obtaining a desired result involving misuse of office will satisfy the Hobbs Act. United States v. Bibby, 752 F.2d 1116, 1128 (6th Cir.1985), cert. denied, 106 S.Ct. 1183 (1986). See United States v. Dozier, 672 F.2d 531, 537 (5th Cir.), cert. denied, 459 U.S. 943, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). Bibby mandates some kind of "quid pro quo." Id. at 1127 n. 1. A quid pro quo may be established by circumstantial evidence. See United States v. Greenough, 782 F.2d 1556, 1559 (11th Cir.1986).
 
 
 22
 Sufficient evidence existed of a quid pro quo under each count in this case. In return for the money payments or their equivalent, the business owners who had received citations kept their licenses even though one was a felon and another owed a significant amount of back taxes in violation of the law. Also, Goren's adult "entertainment" establishment employees received temporary licenses enabling them to begin employment immediately after arriving instate, instead of waiting the usual six to eight weeks. We hold that the government has sufficiently established that the benefits Glass received were under color of official right.
 
 IV.
 
 23
 Glass' attorney, Zalman, was mentioned several times during the testimony at trial in connection with the arrangement of the gun transaction and with the prostitution date under Counts 1 and 2 of the indictment. Defendant recognizes Zalman's right to invoke his Fifth Amendment right against self-incrimination, but claims that permitting him to do so in open court was prejudicial and denied his right of confrontation.
 
 
 24
 While we do not countenance this practice except in unusual circumstances, we have in appropriate instances permitted the practice of calling a witness, such as Zalman, who will assert a Fifth Amendment privilege while on the stand. We find this case to fall within the purview of the exception to the usual rule where the prosecution's case would otherwise substantially be prejudiced by the failure to permit the witness to be called to the stand for questioning in the presence of the jury. See United States v. Licavoli, 725 F.2d 1040 (6th Cir.1984); United States v. Vendetti, 623 F.2d 1144 (6th Cir.1980); United States v. Kirkpatrick, 477 F.2d 357 (6th Cir.1973). The prosecutor here had "an honest belief that the witness has information which is pertinent to the issues in the case and which is admissible under applicable rules of evidence." Vendetti, 623 F.2d at 1147, quoting Kirkpatrick, 477 F.2d at 360. Zalman's part in the illegal scheme charged against defendant was apparent, and the failure to call him might well have jeopardized the government's case in several counts. We find no error in this ruling.
 
 
 25
 We accordingly AFFIRM the convictions of Glass in all respects.
 
 
 
 [1]
 373 U.S. 83 (1963)
 
 
 [2]
 United States v. Turner, 490 F.Supp. 583, 608-09 (E.D.Mich.1979), aff'd without opinion, 633 F.2d 219 (6th Cir.1980), cert. denied, 450 U.S. 912 (1981)
 
 
 [3]
 Fed.R.Evid. 404(b) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [4]
 The district court apparently is referring to Fed.R.Crim.P. 12(d)(2) and not 12(b)(2). Fed.R.Crim.P. 12(d) provides:
 (d) Notice by the Government of the Intention to Use Evidence.
 (1) At the Discretion of the Government. At the arraignment or as soon thereafter as is practicable, the government may give notice to the defendant of its intention to use specified evidence at trial in order to afford the defendant an opportunity to raise objections to such evidence prior to trial under subdivision (b)(3) of this rule.
 (2) At the Request of the Defendant. At the arraignment or as soon thereafter as is practicable the defendant may, in order to afford an opportunity to move to suppress evidence under subdivision (b)(3) of this rule, request notice of the government's intention to use (in its evidence in chief at trial) any evidence which the defendant may be entitled to discover under Rule 16 subject to any relevant limitations prescribed in Rule 16.
 
 
 [5]
 Section 1951 provides in part:
 Sec. 1951. Interference with commerce by threats or violence
 (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
 (b) As used in this section--
 (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
 (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
 (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.
 Emphasis added.
 
 
 [6]
 The Second Circuit interpreted numerous circuit opinions, including Butler, to require evidence that the public official misused his office to obtain the benefits. United States v. O'Grady, 742 F.2d 682, 689 (2d Cir.1984). O'Grady indicated that most reported decisions merely establish conduct from which inducement could be inferred