UNITED STATES of America,
Plaintiff–Appellee,

v.

Homer L. CHEESE and Jerry Stevens,
Defendants–Appellants.

Nos. 00–5286, 00–5287.

United States Court of Appeals,
Sixth Circuit.

June 25, 2002.

258

Before RYAN and GILMAN, Circuit Judges; and POLSTER, District Judge.[1]

## OPINION

POLSTER, District Judge.

Defendants Homer Lee Cheese, Jr. and Jerry Ryan Stevens appeal their final judgments of guilt for conspiracy and possession with intent to distribute a Schedule II controlled substance (crack cocaine) and aiding and abetting the same, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 2. Stevens also appeals his conviction of control of an establishment for committing a drug offense, in violation of 21 U.S.C. § 856. For the reasons that follow, we AFFIRM the final judgments.

## I. BACKGROUND

In May 1999, a police informant notified law enforcement officers that young black males from Detroit, Michigan, were selling crack cocaine in room 236 of the Econo–Lodge motel in Lexington, Kentucky. On May 25, 1999, six officers arrived at the Econo–Lodge to investigate. The officers knocked on room 236. Although no one in room 236 responded, Cheese, who was in room 232 with Stevens, heard the knocking and opened the door to that room. After seeing the uniformed officers, he quickly shut the door and went back into room 232.

One of the officers recognized Cheese from a previous, unrelated theft investigation. As a result, he and the other officers proceeded to room 232 and knocked on the door. Cheese opened the door. The officers claim that the defendants gave them permission to search the room. The defendants deny this contention. In any event, the officers searched the room and found the following items: (1) two gym bags, one containing $3,870 and another containing $2,743; (2) two torn plastic bags with crack cocaine residue (weighing .52 milligrams) in the bathroom trash can; (3) 38 or 39 torn plastic sandwich bag corners;

1. The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

(4) a box of sandwich bags; and (5) a box of ammunition, but no gun.

The officers transported the defendants to the Fayette County Detention Center where both made monitored telephone calls, freely discussing the search and their subsequent arrests. These recordings were admitted into evidence. In one of the conversations, Stevens admitted that Cheese had flushed two ounces (56.7 grams) of crack cocaine down the toilet before the officers searched the motel room. In another conversation, Stevens spoke of hiding crack cocaine at a house (222 Warnocke Street) and near the pool at the motel. After reviewing these conversations, officers recovered 8.65 grams and 26.06 grams of cocaine from the said locations. During these conversations, Stevens also directed "Bishop" (an unidentified person to whom Stevens placed calls) and Vance "Corey" Lewis (a co-defendant who subsequently pled guilty) to continue to use the Warnocke Street property for drug sales. Officers thereafter monitored the Warnocke Street property and eventually recovered another 423 milligrams of crack cocaine from that location. The calls also referenced previous drug sales involving 33 grams of crack cocaine, money transactions involving drugs, properties used in drug sales, and guns. The total amount of crack cocaine involved in the conspiracy and charged to both defendants was approximately 124 grams.

A federal grand jury indicted Cheese and Stevens on a twelve-count indictment (three of these counts specifically referred to Stevens). Prior to trial, Stevens filed a motion (that Cheese joined) to suppress the evidence recovered from their motel room. At the suppression hearing, the trial court denied the defendants' motions. After a trial on the merits, the jury found the defendants guilty of conspiracy and possession with the intent to distribute. The jury also found Stevens guilty of using 222 Warnocke Street and 421 Campbell Street to distribute drugs. The jury acquitted Cheese of using 421 Campbell Street to distribute drugs.[2] The district court judge sentenced Stevens to 168 months of incarceration on each of four counts, to be served concurrently. The judge sentenced Cheese to 151 months of incarceration on one count and 150 months of incarceration on the other count, to be served concurrently.

Defendants raise the following issues on appeal:

1. Whether the district court committed clear error when it concluded that the defendants consented to the search of their motel room, in violation of their Fourth Amendment rights?

2. Whether the district court erred when it determined that there was sufficient evidence to convict Stevens and Cheese of a conspiracy under 21 U.S.C. § 846?

3. Whether the district court abused its discretion when it admitted the evidence of gang membership, in violation of Fed.R.Evid. 404(b)?

4. Whether the district court abused its discretion when it refused to excuse two jurors based upon potential prejudice created by a news report?

5. Whether the district court violated Stevens' Sixth Amendment right to counsel when it denied his attorney's motion to withdraw because of an alleged conflict of interest?

6. Whether the district court committed clear error when it enhanced Stevens' sentence by two levels pursuant to U.S.S.G. § 3B1.1(c), for

**2.** Cheese was not charged with using 222 Warnocke Street to distribute drugs.

having an aggravating role in the offense?

7. Whether the district court committed clear error when it determined that Stevens was responsible for more than 50 grams of crack cocaine and sentenced him under U.S.S.G. § 2D1.1(c)(4)?

8. Whether the district court erred in sentencing the defendants in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)?

Each of these issues will be discussed in turn below.

## II. ANALYSIS

### A. Denial of Motion to Suppress

■ The defendants contend that the district court erred when it ruled that they voluntarily consented to the search of their motel room. The Fourth Amendment's prohibition against warrantless searches does not apply in cases where voluntary consent to the search was given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In determining whether consent was freely given, district courts must look to the totality of the circumstances. *Id.* at 226. A district court's determination that a defendant freely consented to a search may not be overturned unless it was clearly erroneous. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir.1998). Substantial deference is accorded to a district court's credibility determinations. *United States v. Aloi*, 9 F.3d 438, 440 (6th Cir.1993).

At the suppression hearing, Stevens and Cheese testified that the police officers entered their room without a warrant or permission, and proceeded to search the room without their consent. According to Cheese, there were 20–30 officers present during the search. Neither defendant testified that he was physically touched or threatened by the officers. The government countered the defendants' testimony by offering the testimony of Officers Ensminger and Dawson, who were both present during the search of room 232. Both officers stated that Ensminger and Cheese recognized one another and that Cheese invited them into his hotel room. The officers further testified that each of the defendants consented to the search of room 232 and that there were no more than six officers in the room during the search.

After the suppression hearing, the district court issued a written decision in which it denied the defendants' motion to suppress after finding that they had "freely and voluntarily consented to the search of their room." The district court noted that each officer's testimony was clear, detailed, and consistent with the other officer's testimony. The court also was struck by the fact that neither of the defendants testified that they were ever physically touched, threatened, or that any consent given was not given freely. Nor did either defendant ever attempt to stop the officers from continuing the search once it had begun. The court rejected the defendants' attempt to portray the officers as "renegade cops," noting that the officers made no attempt to enter or search room 236 after their knocks went unanswered.

In light of the deference that must be accorded to a district court's credibility determinations, we find that there was no error in the denial of the defendants' motion to suppress.

### B. Sufficiency of the Evidence

■ The defendants contend that the government failed to present sufficient evidence of conspiracy. We review challenges to the sufficiency of evidence "by considering the evidence in the light most

favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *United States v. Spearman,* 186 F.3d 743, 746 (6th Cir.1999). In establishing the existence of a conspiracy, the government may rely solely upon circumstantial evidence, and "need not remove every reasonable hypothesis except that of guilt." *Id.* (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986)). Evidence of a tacit agreement or mutual understanding is sufficient to demonstrate a conspiracy. *United States v. Hughes,* 891 F.2d 597, 601 (6th Cir.1989).

At trial, the government presented evidence concerning the drugs, money, and drug-related items that were found in the hotel room and at the locations revealed in the defendants' telephone conversations. The government also presented audiotaped recordings of the monitored telephone calls made by the defendants to family members and friends while they were being detained at the Fayette County Detention Center. Finally, the government presented the testimony of Matthew Austin, a former gang member who testified that Stevens had been the leader of the gang and that he had sold drugs with the defendants. We find that the government presented more than enough evidence for a rational trier of fact to conclude that the defendants were engaged in a conspiracy to possess with intent to distribute cocaine base.

## C. Admission of Gang–Related Evidence

■ The defendants next argue that the district court committed reversible error by allowing the government to introduce highly prejudicial evidence concerning their alleged involvement in a Detroit gang. The government contends that the evidence of gang involvement was properly admitted by the district court to show that Stevens was the leader of the "Money Makers" gang, the gang was in the business of selling drugs, and the defendants' intent and opportunity to commit a crime.

The admission of evidence pertaining to gang membership is subject to an analysis under Federal Rules of Evidence 403 and 404(b). Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. This Court reviews a district court's Rule 403 determinations for abuse of discretion. *United States v. Sassanelli,* 118 F.3d 495, 498 (6th Cir.1997). The admission of evidence over a Rule 403 objection "constitutes an abuse of discretion only if the probative value of the evidence is substantially outweighed by its prejudicial character, when looking at the evidence in the light most favorable to its proponent." *United States v. Garcia,* 20 F.3d 670, 672 (6th Cir.1994).

Federal Rule of Evidence 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show an action in conformity therewith...." Fed. R.Evid. 404(b). Evidence of other crimes, wrongs, or acts may, however, be admitted for other purposes "if such evidence bears upon a relevant issue in the case." *United States v. Hardy,* 228 F.3d 745, 750 (6th Cir.2000). A party seeking to admit evidence within the scope of Rule 404(b) must first demonstrate to the court that the other bad acts actually occurred. *Id.* The proponent of the evidence must then cite the specific purpose for which it hopes to offer the evidence. *Id.* If the district court

is convinced that the "other bad acts" occurred and that the proponent of the evidence seeks to offer it for a legitimate purpose, the court then "must determine whether the probative value of the identified purpose outweighs the risk of unfair prejudice." *Id.*

We apply a mixed standard of review to a district court's decision to admit evidence within the scope of Rule 404(b). We review the district court's factual determination regarding the occurrence of the acts for clear error. *Id.* We apply de novo review to a district court's determination that the evidence was to be offered for a legitimate purpose. *Id.* Finally, we review for abuse of discretion the district court's determination that the probative value of the evidence outweighs its prejudicial effect. *Id.*

At trial, the government introduced gang-related evidence seized from Stevens' Michigan residence pursuant to a valid search warrant. That evidence included: (1) several photographs of Stevens and others; (2) a gang jacket and hat; (3) a book by Detroit gang member, Butch Jones, entitled *Young Boys, Incorporated;* and (4) handguns, ammunition, and a bullet proof vest.

The government offered the testimony of Matthew Austin, a friend of the defendants, who testified that Stevens and his cousin were leaders of a gang called the Money Makers (also known as "M & M") which made its money by selling narcotics. While Austin was on the stand, the government questioned him about eight photographs depicting the defendants and other individuals flashing gang symbols and wearing gang insignia. Austin identified Stevens in all eight of the photographs and identified Cheese in one of the photographs. The government also offered the testimony of Drug Enforcement Agency Special Agent Robert Alcaro. Alcaro, who was a member of a special task force in Detroit, testified that he applied for and obtained a warrant to search Stevens' Detroit residence. Alcaro went on to identify the eight photographs previously shown to Austin as items discovered during the search. Alcaro also identified and offered explanatory testimony regarding the jacket, hat, weapons, and gang-related book that were seized during the search. Alcaro testified that the photographs found at Stevens' home appeared to be emulating pictures of gang activity included in the book, *Young Boys, Incorporated.*

The defendants never objected to the majority of the gang-related evidence. In fact, the only objections that the defendants raised during the testimony of either Austin or Alcaro were general objections to the introduction of the photograph of Stevens wearing an M & M jacket and to the book, *Young Boys, Incorporated.* A general objection is not sufficient to invoke Rule 404(b), and failure to raise a specific objection precludes a party from raising such an argument on appeal. *See, e.g., United States v. Glass,* No. 86–5217, 819 F.2d 1142, 1987 WL 37592, *3, unreported (6th Cir. June 5, 1987). Nor did the defendants ever request an on-the-record balancing under either Rule 403 or Rule 404(b). As a result, the district court's failure to make such findings does not require reversal. *See, e.g., United States v. Cowart,* 90 F.3d 154, 157 (6th Cir.1996).

Even if the district court had erroneously admitted gang-related evidence, the defendants would be unable to establish that the error was prejudicial. In this case, the government presented overwhelming evidence of the defendants' involvement in a drug conspiracy, including drugs found at the hotel and other locations referenced in the defendants' monitored telephone calls, transcripts of the monitored calls, and the testimony of one of the defendants' former

associates who described the defendants' drug-selling operations. In the face of such evidence, the admission of evidence relating to the defendants' gang-related activities was, at most, harmless error.

### D. The District Court's Refusal to Excuse Two Jurors

Defendant Cheese contends that the district court abused its discretion when it refused to excuse two jurors after determining that they had read a newspaper article concerning a young Lexington, Kentucky man who died as a result of cocaine use. Alternatively, Cheese contends that the district court erred by failing to admonish or instruct the jury that they should not consider the news story and should decide the case solely upon the evidence presented at trial. Although the article had nothing to do with the defendants in this case, Cheese maintains that because it concerned the cocaine-related death of a Lexington man, and the defendants were residents of Detroit charged with conspiring to distribute cocaine in Lexington, the article had obvious prejudicial effects.

■ The morning after the article appeared in a local paper, the judge agreed to question jurors as to whether they had read the article and whether they believed that it would influence their ability to evaluate the guilt or innocence of the defendants in this case. One juror, who had heard a television news account of the man's death, told the court that as a result of hearing the story she would not be able to act as an impartial juror. The court properly dismissed that juror. Four other jurors indicated that they had learned of the young man's death, but claimed that the story would not affect their ability to fairly evaluate the evidence in this case. Cheese contends that two of the four remaining jurors hesitated before responding and that they therefore should also have been dismissed. The judge considered and rejected this claim, stating that he "was convinced by [the remaining jurors'] answers that ... their judgment about how they would decide the guilt or innocence of these defendants would not be affected."

This court reviews a district court's actions regarding potential juror prejudice under the abuse of discretion standard. *United States v. Rugiero,* 20 F.3d 1387, 1390 (6th Cir.1994). A district court abuses its discretion when it makes clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 615 (6th Cir.1995). Even though the news story at issue in this case had nothing to do with the defendants, the district court agreed to question the jurors to determine whether the story might nonetheless interfere with their ability to determine the defendants' guilt or innocence. We find nothing in the record that would lead us to believe that the court's finding that the two jurors who allegedly hesitated in responding were unaffected by the story was clearly erroneous. Moreover, the court's jury instructions specifically admonished jurors not to "let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way." Given these circumstances, we find that the district court did not abuse its discretion in allowing the two jurors to remain or in failing to provide an admonishment or instruction specific to the news story.

### E. The District Court's Refusal to Allow Stevens' Counsel to Withdraw

■ Defendant Stevens contends that his conviction must be overturned because the district court allowed his attorney, Ste-

phen Milner, to proceed under an actual conflict of interest, resulting in prejudice, that violated his Sixth Amendment right to counsel.

Where a defendant claims that he received ineffective assistance of counsel because his attorney represented both him and a witness, this Court engages in a two-step inquiry. First, we ask "whether there is an actual conflict of interest." *United States v. Boling,* 869 F.2d 965, 971 (6th Cir.1989). If we determine that an actual conflict of interest exists, we then ask "whether that conflict caused ineffective performance in violation of the Sixth Amendment." *Id.* Actual conflicts are demonstrated when the appellant can reference

> "specific instances in the record to suggest an actual conflict or impairment of [his] interests. Appellant[ ] must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical. There is no violation where the conflict is irrelevant or merely hypothetical; there must be an actual significant conflict."

*Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir.1987) (internal quotations marks omitted).

Before trial, Attorney Milner filed a motion to withdraw as Stevens' counsel because he perceived a conflict of interest in representing Stevens and a potential government witness, Turner Doty. Doty was the title owner of the 421 Campbell Street property which the defendants allegedly used to distribute drugs. Doty also had been the owner of Warnocke Street property. Neither property was listed in a pending forfeiture charge because public records did not show Stevens' interest in them. Doty was a potential government witness because the government believed that he might be able to establish Stevens' interest in the properties. If Stevens were found to have an interest in the properties, the government could forfeit them. Such an interest also would be relevant to Stevens' then-pending motion to suppress the evidence seized from the Warnocke Street property.

In response to the motion to withdraw, the court conducted a hearing at which Doty testified that he had sold the Campbell Street property to someone named Jerry Stevens. Doty could not, however, identify Stevens and had no records or documentation of the sale. Doty believed that Milner had prepared an unrecorded deed transferring the property to Stevens. Although Doty testified that Stevens had paid cash for the property, he could not remember the amount. Doty further testified that he had sold the Warnocke Street property to someone other than Stevens three or four months ago. Doty testified that Stevens had not rented the Warnocke Street property from him.

After Doty testified, the court denied Milner's motion to withdraw. The judge concluded that Milner did not have a conflict of interest because Doty disclaimed any interest in the Warnocke Street property and the government stated that it had no interest in making any claims against Doty with regard to the Campbell Street property or any proceeds obtained from its sale. We agree with the district court's finding. Because the government had no interest in pursuing Doty, Milner was never required to choose between two courses of action which would have been helpful to one client and harmful to another. Consequently, any perceived conflict of interest was merely hypothetical and may not

serve as a valid basis for reversing Stevens' conviction.

### F. Validity of Two–Level Sentencing Enhancement

■ Stevens contends that his case should be remanded for resentencing because the district court erred when it enhanced his sentence by two levels under U.S.S.G. § 3B1.1(c). Stevens argues that there is no evidence in the record to support the conclusion that he controlled co-defendant Cheese, and that maintaining control over the assets of the conspiracy is insufficient to support an enhancement under U.S.S.G. § 3B1.1(c). Stevens also argues that the mere organizing of a large scheme is not enough to support an enhancement under U.S.S.G. § 3B1.1(c).

Section 3B1.1(c) allows for a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." U.S.S.G. § 3B1.1(c). This Court has interpreted § 3B1.1(c) as requiring that the defendant direct a "participant" or "a person who is criminally responsible for the commission of the offense, but need not have been convicted." *United States v. Lewis*, 68 F.3d 987, 989 (6th Cir.1995); *see also*, U.S.S.G. § 3B1.1 comment, n. 1. The government must prove the elements of a § 3B1.1(c) enhancement by a preponderance of the evidence. *Lewis*, 68 F.3d at 988–89. This Court reviews the district court's factual findings that enhancement was warranted for clear error. *Id.* at 989.

The district court concluded that a two-level enhancement was appropriate because "the entire record shows that [Stevens] was a leader of the entire conspiracy, especially ... Mr. Cheese.... I listened to these tapes of these telephone conversations, and there were too may instructions given by [Stevens] for him not to be considered a leader in the case.... [T]he record definitely showed that [Stevens] was in control of the operation...." Given the directives Stevens made in his monitored telephone calls, we find no fault with the district court's conclusion that Stevens was an organizer, leader, manager or supervisor in criminal activity. Consequently, we reject Defendant Stevens' claim that the court committed clear error when it applied § 3B1.1(c)'s two-level enhancement.

### G. Amount of Cocaine Attributed to Defendant Stevens

Defendant Stevens claims that there was insufficient evidence to support a finding that he was involved with more than 50 grams of cocaine base. Specifically, Stevens contests: (1) the 56.7 grams (2 ounces) of cocaine flushed down the toilet by Cheese; and (2) the 33 grams of cocaine attributed to him based upon references to money in the monitored telephone conversations.

A defendant in a conspiracy may be held accountable for the actions of others if the actions were in furtherance of activity that the defendant jointly undertook with others and that was reasonably foreseeable to him. *United States v. Sims*, 975 F.2d 1225, 1243 (6th Cir.1992). A district court's determination as to the quantity of drugs attributable to a defendant in a conspiracy is a finding of fact that must be upheld unless it is clearly erroneous. *United States v. Wilson*, 954 F.2d 374, 376 (6th Cir.1992).

At Stevens' sentencing hearing, the district court sentenced Stevens to 168 months after finding that the government offered sufficient proof to attribute 50 to 150 grams of crack cocaine to him. The evidence of drug quantities offered by the government included: (1) .52 milligrams of cocaine residue found in the defendants'

hotel room; (2) 8.65 grams of crack cocaine found during the first search of the Warnocke Street home; (3) 26.06 grams of crack cocaine hidden behind the swimming pool at the Econo–Lodge; (4) 423 milligrams of crack cocaine found hidden in the couch after a second search of the Warnocke Street house; (5) 56.7 grams (2 ounces) of crack cocaine that the defendants flushed down the toilet at the Econo–Lodge; (6) $3,300 worth of crack cocaine (estimated in witness testimony as 33 grams) that Stevens and Cheese indicated they had fronted to others during their monitored telephone conversations.

■ Stevens first contends that the trial court improperly attributed the 56.7 grams of crack cocaine that Cheese flushed down the toilet to him when determining his sentence. Stevens maintains that the drugs flushed down the toilet were not within the scope of the conspiracy and that there was no evidence as to the type of drug Cheese flushed. We disagree. In a monitored telephone conversation with co-defendant Vance "Corey" Lewis, Stevens indicated that he was well aware of the fact that Cheese had crack cocaine, but simply believed that Cheese had left it outside of the room:

> Stevens: Yeah. So I'm—I'm laying on my bed, I'm about—I'm thinking, hey, they can't do shit, ain't nothing but money in here.
>
> Corey: Uh-huh.
>
> Stevens: Man, Cheddar [Cheese] walked to his side of the bed and grabbed two -
>
> Corey: He opened up the door, you all shouldn't have let them in.
>
> Stevens: No, no. I can't look. I am thinking that Cheddar [Cheese] still has his (unintelligible) outside.
>
> Corey: Right.
>
> Stevens: When they knocked on -

> Corey: He didn't have it outside?
>
> Stevens: Nope, he had brung it back in when I left.
>
> Corey: How much was it?
>
> Stevens: Two, two, Two OZ's.
>
> Corey: Oh yeah? That ain't what they found.
>
> Stevens: No, he flushed it.

This conversation along with the drug paraphernalia, duffle bags full of cash, and crack cocaine found at the motel, strongly support the district court's conclusion that Stevens reasonably foresaw the 56.7 grams of crack cocaine possessed and subsequently flushed by Cheese at the motel. For this reason, the district court did not err in attributing the 56.7 grams to Stevens.

■ Stevens next argues that the district court erred when it inferred from discussions of money in the monitored telephone conversations that he and Cheese had fronted 33 grams of cocaine to others during the course of the conspiracy. In one monitored telephone conversation, Stevens asked co-defendant Vance "Corey" Lewis to collect $1,900 from "Kenny"— $1,700 of which was for "the new [shipment] that I dropped off to him." In another monitored telephone conversation, Cheese instructed his girlfriend to have "Dewey" pay the $2,500 that he owed him to Cheese's mother. In a third conversation, Stevens informed "Bishop" that "Dewey" owes Cheese about $1,600 and instructed "Bishop" to collect the money, keep $800 for himself, and give the rest to Stevens. At trial, Detective Ensminger testified that one gram of cocaine is valued at $100. Based upon the telephone conversations and Ensminger's testimony, the presentence report attributed 33 grams of

cocaine to Stevens.[3]

Stevens' own directives provide more than ample evidence that the 33 grams were foreseeable to him. The recorded telephone conversations clearly indicate that both Stevens and Cheese were attempting to collect money owed to them for drug sales. Although a portion of that money was apparently owed to Cheese rather than Stevens, Stevens knew about at least $1,600 of the debt and attempted to collect it for himself. Even if the district court had erred in attributing the 33 grams to Stevens, the error would have been of little consequence because sentencing under U.S.S.G. § 2D1.1(c)(4) is proper for total amounts of cocaine base of at least 50 grams, but less than 150 grams. The drug quantity attributable to Stevens was well over the 50–gram threshold even without the inclusion of the 33 grams. Consequently, we find no basis for Stevens' claim that the district court committed reversible error when it included the 33 grams of crack cocaine in the total amount attributed to him.

## H. *Apprendi* Violations

■ The defendants contend that the district court violated the rule set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Cheese contends that the district court violated *Apprendi* by basing his sentence on 50 grams of cocaine base when only 36 grams were presented to the jury. Cheese argues that had the district court only considered 36 grams, he would have been sentenced to an offense level of 30, rather than a level 32. Stevens contends that the district court violated *Apprendi* by subjecting him to a statutory range of 10–years to life based upon a quantity of

drugs that was not presented to the jury and proved beyond a reasonable doubt.

The district court sentenced both defendants on February 25, 2000 – approximately four months before the United States Supreme Court rendered its decision in *Apprendi.* Because the case is before us on direct appeal, the defendants are entitled to retroactive review of their *Apprendi* claim. *United States v. Hough,* 276 F.3d 884, 890 (6th Cir.2002). We therefore review the defendants' *Apprendi* challenge de novo. *Id.*

In *Apprendi,* the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. at 490. *Apprendi* "does not mean, however, that the precise amount of drugs must always be submitted to the jury." *United States v. Hough,* 276 F.3d at 890. Rather, in this circuit, "the amount of drugs must be submitted to a jury and proved beyond a reasonable doubt when a drug amount calculation either threatens a penalty that would pierce the ceiling authorized by the statute … or threatens a penalty that would raise the floor authorized by the statute." *Id.* (internal citations omitted).

Both of the defendants were charged with conspiracy and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. The court instructed the jury that "the government must prove that two or more persons conspired, or agreed, to cooperate with each other to commit the crime of possession with intent to distribute in ex-

---

**3.** Although Dewey apparently owed Cheese $2,500, the presentence report attributed only $1,600 to Cheese. This finding was presum- ably tied to Stevens' own reference to $1,600 in his conversation with "Bishop."

cess of fifty (50) grams of cocaine base, that is, 'crack cocaine.' " The jury instructions also specified that each of the counts against the defendants had to be proven beyond a reasonable doubt. After receiving these instructions, the jury returned a verdict finding the defendants guilty of both conspiracy and possession with intent to distribute cocaine base.[4]

The court subsequently sentenced Stevens to 168 months of imprisonment on each count (to be served concurrently), and sentenced Cheese to 150 months of incarceration for violating 21 U.S.C. § 846 and 151 months of incarceration for violating 21 U.S.C. § 841(a)(1) (to be served concurrently). These sentences are not tied to the ten-year minimum specified in 21 U.S.C. § 841(b)(1)(A)(iii) for violations of 21 U.S.C. § 841(a)(1) or 21 U.S.C. § 846 involving 50 or more grams of crack cocaine.[5] The sentences also fall within the twenty-year maximum sentence set forth in 21 U.S.C. § 841(b)(1)(C) for violations of 21 U.S.C. § 841(a)(1) or 21 U.S.C. § 846 that do not involve death, serious bodily injury, or a prior felony drug conviction. Because the jury found that the defendants conspired to distribute or possess at least 50 grams of crack cocaine and the sentence given to the defendants falls within the appropriate statutory range, there was no *Apprendi* violation.

4. The jury also found Stevens guilty of two counts of opening and maintaining a place for the purpose of distributing and using a controlled substance in violation of 21 U.S.C. § 856.

5. Both defendants' sentences were calculated in accordance with the offense levels set forth in the United States Sentencing Guidelines. The jury's finding that the defendants conspired, or agreed, to cooperate with each other to commit the crime of possession with intent to distribute in excess of fifty (50) grams of cocaine base resulted in a base offense level of 32 under U.S.S.G.

## III.  CONCLUSION

For the reasons stated above, the judgment of the district court is **AFFIRMED.**

§ 2D1.1(c)(4).  Defendant Cheese's sentence is at the low end of the range (151–188 months) for an individual with a base offense level of 32 and a criminal history category of III. Defendant Stevens received a two-level enhancement based upon the court's finding that he was a leader or organizer in the conspiracy as specified in U.S.S.G. § 3B1.1(c).  His sentence of 168 months is at the low end of the sentencing range (168 to 210 months) for an individual with a base offense level of 34 and a criminal history category of II.